(No. 67718.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LAWRENCE ANDREWS, Appellee.

*Opinion filed December 21, 1989.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund, Renee G. Goldfarb, James E. Fitzgerald and Marilyn F. Schlesinger, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Kenneth L. Jones, Assistant Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Defendant, Lawrence Andrews, was indicted for murder, armed robbery, and aggravated battery, and his first trial resulted in a hung jury. Following a second jury trial, defendant was convicted of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1), armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2), and aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4). The trial court sentenced defendant to an extended term of 70 years' imprisonment on the murder conviction (see Ill. Rev. Stat.

1985, ch. 38, par. 1005—5—3.2(b)), 30 years' imprisonment on the armed robbery conviction, and 5 years' imprisonment on the aggravated battery conviction, all to be served concurrently. The appellate court found that defendant had established a *prima facie* showing of racial discrimination in the State's use of peremptory challenges in violation of the United States Supreme Court decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, and remanded the cause to the circuit court of Cook County with directions to conduct a hearing to allow the State to come forward with neutral explanations for the use of its peremptory challenges. (172 Ill. App. 3d 394.) We allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The issues before this court are whether defendant waived his right to assert a *Batson* violation and whether the trial court properly sentenced defendant to an extended-term sentence for his murder conviction.

The record establishes the following facts. On February 20, 1984, the victim and driver of the car, 18-year-old Richard Steinbrecher, and his 17-year-old girlfriend, Angela Atiles, exited the Eisenhower Expressway and stopped at a traffic signal. While waiting for the light to change, they were approached by two men, one of whom got into the passenger side of the car where Atiles was sitting and pointed a gun at both Steinbrecher and Atiles. Atiles identified this man as defendant Lawrence Andrews. The other man remained outside the car.

After trying unsuccessfully to pull away, by moving the gear shift, Steinbrecher told the two men to "be cool, we'll give you what you want." Following this, Atiles testified, she heard a "crack" and saw that defendant had shot Steinbrecher. The man she identified as defendant then hit her in the left eye with his gun and ordered, "Give me your money, bitch." She gave him $7, all the money she had, and the men left.

Steinbrecher died as a result of a gunshot wound to his right temple. Atiles was treated for an eye injury.

On appeal, defendant contended, *inter alia*, that the State used its peremptory challenges to systematically exclude blacks from the jury in violation of the equal protection clause of the United States Constitution, relying on *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, which was held to apply retroactively to cases on direct review when *Batson* was decided (*Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708). Defendant's trial took place in January 1986, and was on direct appeal when *Batson* was decided on April 30, 1986.

The appellate court rejected the State's argument that defendant had waived the right to raise a *Batson* challenge. The court found that the appearance of justice in our court system is not fulfilled "if the trial court acquiesces in, condones or fails to preclude attempts by the prosecuting attorney to exclude blacks from the jury solely because they are black." (172 Ill. App. 3d at 402.) The court went on to find that "[w]e see no difference in considering the issue in this case than we would in considering any other plain error violation of constitutional dimension." 172 Ill. App. 3d at 402-03.

Notwithstanding its view of the proper role of the trial judge, the court then considered whether defendant had established a *prima facie* showing of discrimination. The court cited this court's decision in *People v. Hooper* (1987), 118 Ill. 2d 244, in which this court retained jurisdiction of the cause and ordered the circuit court to conduct a *Batson* hearing to allow defendant in *Hooper* to attempt to establish a *prima facie* case; the appellate court, however, finding that *Hooper* was inapplicable, held that "the material facts are sufficiently demonstrated in the record so that we can decide, without prejudice to the defendant or the State, whether a *prima*

*facie* case of racial discrimination \*\*\* exists." (172 Ill. App. 3d at 403.) Finding from its review of the record that the State used all of its eight peremptory challenges against blacks, the court concluded that a *prima facie* case had been established.

The court remanded the cause to the circuit court for a hearing to allow the State to come forward with a neutral explanation for the use of its eight peremptory challenges. The court ordered that if the State did not come forward with a neutral explanation, defendant's convictions were vacated; if the State presented what the trial court determined to be a neutral explanation sufficient to rebut defendant's *prima facie* case, defendant's convictions were affirmed.

Before this court, the State argues that the appellate court incorrectly found that defendant did not waive his right to raise a *Batson* claim. The State contends that defendant has waived his right to raise this issue for two separate reasons. The State first asserts that defendant's trial objection was untimely. Because defense counsel did not object to the State's use of peremptory challenges until after the jury was sworn, the State argues that under *People v. Evans* (1988), 125 Ill. 2d 50, defendant waived his right to raise this issue on appeal. The State also contends that defendant has waived his right to raise this issue because of the lack of evidence in the record to establish the race of the venire and jury; under *People v. Gaines* (1981), 88 Ill. 2d 342, and *Evans*, the State argues, a defendant waives the right to raise a claim concerning the State's use of peremptory challenges when he fails to preserve an adequate record of the race of the challenged jurors. The State also contends that the appellate court erred by undertaking a *prima facie* analysis instead of remanding that issue for the trial court to determine.

Defendant asserts that the appellate court correctly exercised its authority under our Rule 615(a) (107 Ill. 2d R. 615(a)) and ruled on his *Batson* claim as one involving plain error. Defendant also contends that his trial objection was timely. On cross-appeal, defendant argues that that portion of the appellate court's opinion affirming defendant's 70-year extended-term sentence conflicts with this court's decision in *People v. La Pointe* (1981), 88 Ill. 2d 482.

I

Defendant initially contends that the question of waiver raised by the State is moot because the appellate court did not reach the waiver issue but instead exercised its authority under Rule 615(a) to rule on the *Batson* issue as one involving plain error. We find, for the reasons that follow, that the appellate court did not need to rely on the plain error doctrine to reach the *Batson* issue.

The State correctly notes that this court has found that a defendant's failure to object, before the jury is sworn, to a prosecutor's use of a peremptory challenge to exclude a venireperson results in the waiver of that claim. (*People v. Evans* (1988), 125 Ill. 2d 50, 61-62.) In *Evans*, this court noted that "[w]e do not believe that an objection occurring after the jury is sworn can be deemed timely." (125 Ill. 2d at 61-62. See also *Government of the Virgin Islands v. Forte* (3d Cir. 1986), 806 F.2d 73; *United States v. Erwin* (5th Cir. 1986), 793 F.2d 656; *State v. Harris* (1988), 157 Ariz. 35, 754 P.2d 1139; *Thomas v. State* (Miss. 1987), 517 So. 2d 1285; *State v. Peck* (Tenn. Crim. App. 1986), 719 S.W.2d 553; *State v. Castillo* (Fla. 1986), 486 So. 2d 565. But see *United States v. Thompson* (9th Cir. 1987), 827 F.2d 1254; *State v. Sparks* (1987), 257 Ga. 97, 355 S.E.2d 658.) Requiring a timely objection before the jury has been sworn and

the venire dismissed allows the trial court to conduct a hearing while the chosen and stricken venirepersons are still present and before the trial has begun. The record clearly reveals that defense counsel presented a motion for a mistrial, based upon the State's use of peremptory challenges, after the jury was sworn, but before the trial had begun.

This court has held, however, that the principle of waiver applies to the State as well as to defendants. (*People v. Harris* (1989), 129 Ill. 2d 123, 171; *People v. O'Neal* (1984), 104 Ill. 2d 399, 407.) In *Harris*, the State argued that the defendant's failure to object to the State's peremptory challenges until after the last jury panel was sworn constituted waiver. This court found that the State had waived its right to object to the timeliness of the defendant's objection, however, because the State did not raise the issue of timeliness when the defendant initially filed his pretrial motion for a mistrial, but challenged the motion solely on its factual merits; the State also failed to raise the issue in either its initial briefs with this court or at the *Batson* hearing conducted by the trial court on remand. *Harris*, 129 Ill. 2d at 171.

The record reveals that in the case at bar, in response to defendant's motion for a mistrial based on the State's use of peremptory challenges, the State responded to the merits of the motion, arguing that the motion was not a basis for a mistrial under *People v. Payne* (1983), 99 Ill. 2d 135; the State did not object to the timeliness of defendant's motion. We find, therefore, that the State waived its right to object, on appeal, to the timeliness of defendant's motion.

The State next argues that because defendant failed to preserve an adequate record concerning the race of the venirepersons excluded by the State, defendant has waived this issue. Defendant asserts that the doctrine of judicial estoppel should prohibit the State from relying

on any alleged incompleteness of the record because the State did not contest the lack of a record at the argument on the motion for mistrial or during post-trial proceedings. Our examination of the record reveals that it does not contain the transcript of any post-trial proceedings.

We do not believe that the State is precluded from raising this argument, because we believe that by arguing on appeal to the appellate court that defendant waived the *Batson* issue by failing to preserve a complete record during *voir dire* of the racial identity of venirepersons, the State preserved its right to raise the issue here. The State would have absolutely no reason to object to the lack of a record when defendant moved for a mistrial or at any post-trial proceedings where the trial judge presiding over the trial, who has seen the venirepersons and jury with his own eyes, is ruling on the *Batson* issue. We therefore address this issue.

The State contends that under the holding of *People v. Evans* (1988), 125 Ill. 2d 50, and this court's earlier decisions in *People v. Smith* (1969), 42 Ill. 2d 479, and *People v. Gaines* (1981), 88 Ill. 2d 342, defendant has waived his right to object to the State's use of peremptory challenges by failing to preserve an adequate record; the State characterizes the record in this case as barren of any independent, definitive, statistical evidence on the subject of the race of venirepersons.

In *Evans*, the court held that because a venireperson's name was stricken from a roster of excluded blacks set forth in an evidentiary stipulation entered into between defendant and the State concerning the composition of the jury and venire, the defendant waived his right to object to the State's use of a peremptory challenge to exclude that venireperson; the court noted that there was no independent evidence in the record to establish the race of the excluded venireperson. (*Evans,*

125 Ill. 2d at 62.) In *People v. McDonald* (1988), 125 Ill. 2d 182, although the court similarly noted that "the record must disclose the race of the veniremen in order to provide for meaningful appellate review" (125 Ill. 2d at 194-95), the court went on to state that "we disagree with the State insofar as it claims that the deficiencies in the *original voir dire* record in this case result in waiver of defendants' *Batson* claim," not only because the defendants were prevented by the State's objection from making a record in the trial court, but also because the trial and *voir dire* had occurred before *Batson* was decided. (Emphasis added.) (125 Ill. 2d at 195.) The court stated that the "precise purpose for which we remanded this case was to afford defendants an opportunity to substantiate their claim, in recognition of the substantially different evidentiary burden announced in [*Batson*]." 125 Ill. 2d at 195.

Contrary to the State's view of the record in the present case, we do not believe that the record is completely barren of evidence on this issue. The record reveals that the State exercised eight peremptory challenges. The morning after the jury had been sworn, but before trial had begun, defense counsel stated that "the record should also show that the State exercised eight out of the eight peremptories against blacks, that the jury itself that's sworn in has six blacks on it."

In *McDonald* the original record contained, as does the record in the case at bar, defense counsel's contention that the State had used its peremptory challenges to exclude 16 black venirepersons. On remand to the trial court, defendants called their trial counsel to testify at the *Batson prima facie* hearing to establish a case of discriminatory jury strikes. Defendants' trial counsel testified that the State peremptorily challenged all 16 black venirepersons who remained after challenges for cause. On appeal to this court, the State contended that be-

cause only eight black venirepersons testified at the *Batson* hearing, this court's review was limited to consideration of those eight venirepersons.

We rejected the State's argument, noting that the trial court was "plainly entitled to consider this evidence [defense counsel's testimony] in determining that 16 black veniremen were peremptorily challenged." (125 Ill. 2d at 198.) After holding that a trial court may consider a defense attorney's statements concerning the race of excluded venirepersons at a *Batson prima facie* hearing, we can surely do no less as a court of review, particularly when the issue confronting this court is simply whether defendant has waived the *Batson* issue.

The appellate court wrongly addressed the merits of defendant's claim. Notwithstanding the finding by the appellate court that defendant established a *prima facie* case of discrimination, we are not reviewing, as a court of review, the merits of defendant's *Batson* claim. This court is simply determining, based on the record before us, whether defendant may attempt to establish a *prima facie* case of a *Batson* violation.

As we stated in *Evans*, "the initial determination of whether a *prima facie* case has been established is left to the judgment of the trial judge, who is in a superior position to determine whether the prosecutor's exercise of peremptory challenges was motivated by group bias." (*Evans*, 125 Ill. 2d at 66-67.) In *Batson*, the Supreme Court remanded the petitioner's cause for a hearing and did not address the merits of petitioner's argument that the prosecutor had discriminated against black venirepersons. (*Batson*, 476 U.S. at 100, 90 L. Ed. 2d at 90, 106 S. Ct. at 1725.) Consistent with *Batson*, this court remanded a group of cases on May 1, 1987, on direct appeal to this court when *Batson* was decided, to the circuit court of Cook County for *Batson* hearings. See *People v. Hooper* (1987), 118 Ill. 2d 244; see also *People v.*

*Harris* (1989), 129 Ill. 2d 123, 136; *People v. Young* (1989), 128 Ill. 2d 1, 17-18; *People v. McDonald* (1988), 125 Ill. 2d 182, 188; *People v. Evans* (1988), 125 Ill. 2d 50, 60.

Specially concurring with the order remanding *Hooper*, Justice Ryan, joined by Justices Ward and Moran, detailed the reasons supporting the remand of cases that were tried before *Batson* was decided and that present a viable *Batson* issue. Justice Ryan noted:

"I believe it would be manifestly unfair to a defendant if this court were to make a determination from a record made under *Swain* law whether or not a *prima facie* case has been established under *Batson*. \*\*\* If the defendant can present evidence of the discriminatory use of peremptory challenges under *Batson* law which was not disclosed by the record made under *Swain* guidelines, he should have an opportunity to present such evidence for the trial court's consideration. \*\*\* [I]t may well be that on remand the trial court will have to decide the *prima facie* question from a cold record, as this court could do now. But that will not necessarily be true in all cases. We should not preclude the defendant from making such an additional showing by deciding now in this court whether or not a *prima facie* case of discriminatory use of peremptory challenges has been made." *Hooper*, 118 Ill. 2d at 245-46 (Ryan, J., specially concurring).

We conclude that defendant should not be foreclosed by this record from the right to attempt to establish a *prima facie* case of discrimination, at a hearing before the trial judge, based on the State's use of peremptory challenges at defendant's trial. Although if the record before us were completely devoid of any evidence to support defendant's *Batson* claim, defendant might have waived his right to a *Batson* hearing under *Evans*, the statements of defendant's trial counsel provide sufficient reason, under *McDonald*, to remand this case for a *Bat-*

*son* hearing, because it was tried before *Batson* was decided and falls under the implicit dictates of *Hooper*.

We further note that all the evidence defendant may eventually present may not be represented in the record before us; the trial judge may have kept notes written contemporaneously during *voir dire* (see *Evans*, 125 Ill. 2d at 67-68), or may recall certain information from his own observation of the venirepersons in this case; defendant may also wish to call his defense counsel along with some or all of the stricken venirepersons to testify at his hearing (see *McDonald*, 125 Ill. 2d at 191-92). Whatever the trial judge may ultimately determine, that decision will be based on all the information and evidence defendant is able to muster, and made by a trial judge who is "familiar with local conditions and prosecutors, and can draw upon [his] power of observation and judicial experience as a guide in distinguishing a true case of discrimination from a false one." (*Evans*, 125 Ill. 2d at 67.) For all of these reasons, we find that defendant is entitled to a *Batson* hearing to attempt to establish a *prima facie* case of discrimination by the State in its use of peremptory challenges at his trial.

## II

Defendant argues on cross-appeal that the appellate court failed to examine whether defendant's conduct fell within the definition given the words "brutal" and "heinous" by this court in *People v. La Pointe* (1981), 88 Ill. 2d 482, to support his extended-term sentence. Defendant contends that the facts of the murder, the most serious offense of which defendant was convicted, were not so exceptionally brutal and heinous as to justify an extended-term sentence.

Section 5—8—2(a) of the Unified Code of Corrections (the Code) provides that a judge may sentence an offender to an extended term if the factors set forth in

section 5—5—3.2 of the Code are found to be present. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a).) Section 5—5—3.2(b)(2) of the Code provides that an extended-term sentence may be imposed when a defendant is convicted of any felony and the "court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2).

The trial court found that "this is an offense accompanied by most exceptional brutal and heinous behavior, indicative of wanton cruelty," because the murder was senseless and unresisted. The court sentenced defendant to an extended term of 70 years' imprisonment for murder.

This court utilizes an abuse of discretion standard of review in determining whether a sentence is excessive (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492; *People v. Perruquet* (1977), 68 Ill. 2d 149, 153-54); we will use this standard to also determine whether the trial court properly found defendant eligible for an extended-term sentence under section 5—5—3.2(b)(2) of the Code based on the brutal or heinous nature of the murder of which he was convicted. See *La Pointe*, 88 Ill. 2d at 501 ("We do not believe that the trial judge can be said to have abused his discretion in sentencing defendant to natural life imprisonment without parole [under section 5—8—1(a)(1)(b) of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1)(b))]").

In *La Pointe*, the court addressed defendant's contention that the statutory language permitting the imposition of a natural life imprisonment sentence where conduct is "accompanied by exceptionally brutal or heinous behavior, indicative of wanton cruelty" (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1)(b)) authorizes that sentence only if he had inflicted torture or unnecessary pain upon his victim. The court found that the statute does

not limit the imposition of a sentence of natural life imprisonment to only those murders involving torture or the infliction of unnecessary pain. The court, citing Webster's Third New International Dictionary, defined "heinous" as " 'hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal,' " and defined "brutal" as " 'grossly ruthless,' 'devoid of mercy or compassion: cruel and cold-blooded.' " (*La Pointe*, 88 Ill. 2d at 501.) Because the language of section 5—5—3.2(b)(2) of the Code, under which defendant's sentence was extended, and section 5—8—1(a)(1)(b) of the Code, interpreted by the court in *La Pointe*, is identical, we believe that *La Pointe* is instructive on this point. See *People v. Bedony* (1988), 173 Ill. App. 3d 613, 620 (referring to *La Pointe* in case involving section 5—5—3.2(b)(2)); *People v. Thomas* (1985), 139 Ill. App. 3d 163, 185 (same); *People v. Trimble* (1985), 131 Ill. App. 3d 474, 476 (same); *People v. Nester* (1984), 123 Ill. App. 3d 501, 504 (same); *People v. Campbell* (1984), 126 Ill. App. 3d 1028, 1057 (same); *People v. Clay* (1984), 124 Ill. App. 3d 140, 155 (same); *People v. Johnson* (1984), 121 Ill. App. 3d 358, 375 (same).

Both defendant and the State cite to appellate court cases, many of which are listed above, reversing or upholding extended-term sentences given under section 5—5—3.2(b)(2). The State bases its argument, that the trial court correctly found that defendant was eligible for an extended-term sentence, on the contention that defendant's act of shooting a defenseless victim was cruel and cold-blooded where defendant could have achieved his goal without killing the victim and where defendant's conduct immediately following the shooting showed his callous disregard for the life he had taken. We do not believe that the facts of this case justify an extended term.

Although the victim was defenseless and the defendant could have achieved his goal of robbing the victim

and the victim's girlfriend without killing the victim, every single murder is by nature unnecessary; section 5—5—3.2(b)(2), however, requires that the murder be "exceptionally" brutal or heinous. All murders are brutal and heinous to a certain degree. Moreover, many murdered robbery victims are defenseless when killed. Section 5—8—2, however, allowing for extended-term sentences, "was not intended to convert every offense into an extraordinary offense subject to an extended-term sentence." *People v. Evans* (1981), 87 Ill. 2d 77, 88-89.

In upholding defendant's life sentence in *La Pointe*, the court focused on defendant's significant history of criminal activity, callous attitude and complete lack of remorse (indicated by the fact that in jail following the shooting, defendant wore a T-shirt that said "Elmhurst Executioner"), and premeditation (evidenced by defendant's statement to a friend prior to the murder that he was going to shoot a cabdriver). *La Pointe*, 88 Ill. 2d at 487-90, 501.

In the case at bar, defendant's criminal history contained no crimes of violence, consisting instead of convictions for theft and burglary. There is no evidence in the record that defendant indicated prior to the crime that he intended to kill the victim or that he exhibited a callous attitude and complete lack of remorse following the murder, like the defendant in *La Pointe*. Defendant indicated his remorse at the sentencing hearing, and the trial judge accepted defendant's expression as sincere, stating that one of the reasons he was not imposing a natural life sentence was defendant's expression of sorrow. For all these reasons, we find that the trial court abused its discretion in sentencing defendant to an extended term of 70 years' imprisonment based on defendant's murder conviction.

We therefore affirm the decision of the appellate court to address defendant's *Batson* claim, although for

reasons set out in this opinion which are different from those relied upon by the appellate court. We reverse the appellate court's affirmance of the trial court's order sentencing defendant to an extended term of 70 years' imprisonment on his murder conviction and remand this cause to the circuit court for resentencing. We vacate that part of the appellate court's judgment finding that defendant established a *prima facie* case of racial discrimination in the State's exercise of peremptory challenges.

Pursuant to this court's supervisory authority, we retain jurisdiction and remand this cause to the circuit court of Cook County for a hearing to allow the defense to establish a *prima facie* case of racial discrimination in the State's use of peremptory challenges (see *People v. Hooper* (1987), 118 Ill. 2d 244). If the circuit court finds that a *prima facie* showing of such discrimination has been made, the court is directed to determine whether or not there is a neutral explanation by the State for the exercise of the questioned peremptory challenges. The court shall make appropriate findings of fact and conclusions of law and file those findings and conclusions with the clerk of this court within 60 days of this decision together with a record of the proceedings on remand.

*Appellate court affirmed in part,*
*reversed in part and vacated in part;*
*circuit court reversed;*
*remanded with directions.*