THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY DIAMOND, Defendant-Appellant.

First District (3rd Division)   No. 1—87—2670

Opinion filed April 29, 1992.

Maria A. Harrigan and David M. Goldwin, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Margaret J. Faustmann, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

In a bench trial, defendant Anthony Diamond (Diamond) was convicted of the stabbing murder of Michael Joyce (Joyce) and sentenced to an extended term of 80 years.

On appeal, defendant contends: (1) that the prosecution's closing argument suggesting two of its witnesses had great credibility because they had made prior consistent statements denied him a fair trial, although no consistent statements were in evidence; (2) that the evidence at trial was insufficient to prove him guilty of murder beyond a reasonable doubt; and (3) that a single stabbing of the victim was not so brutal or heinous as to warrant an extended-term sentence.

Defendant and four friends drove to a bar in the 2900 block of Irving Park Road on August 2, 1986. While defendant and three of the others entered the bar, Dino Mitchell (Mitchell) was denied admission because of his age and remained outside; he was soon joined by Javier Jarquin (Jarquin). As the two stood near their car, they observed Joyce walking toward them and Mitchell flashed a gang sign to Joyce. Jarquin testified that Joyce then told Mitchell, "If you want some of me, step around the corner."

As Mitchell and Joyce walked to an alley behind the tavern, Jarquin returned to the bar and advised defendant of the confrontation. When defendant, Jarquin and defendant's girl friend, Yvette Bergner (Bergner), reached the alley, Joyce told them to stay back, called Mitchell into the alley and stated he intended to attack Mitchell. Jarquin testified that Mitchell merely stood his ground, taking no action, although armed with a folding knife which Jarquin had provided him before he entered the alley with the victim.

Jarquin further testified that defendant ordered him to run through a gangway, enter the alley behind Joyce, and block his exit. Upon reaching the alley, he ran toward the street and saw defendant, Mitchell and Bergner getting into the car and observed Joyce walking toward him with his hand over his chest and blood on his clothes.

Mitchell testified that after Joyce had shoved him, defendant ordered Mitchell three times to "stick him" with the knife. As Mitchell turned to walk away, defendant grabbed the knife from him and stabbed Joyce in the left side of the chest.

Bergner testified that she had known defendant about one year and knew him to be a leader of the Simon City Royals street gang. She, too, testified that defendant directed Mitchell to "stick him" and

had ordered Jarquin to run through adjoining rear yards to position himself behind Joyce in the alley and block Joyce's exit.

Bergner further corroborated defendant's snatching of the knife from Mitchell and the stabbing of Joyce. This witness then related that later in the car, defendant said, "It was the first one and it felt good."

At the insistance of defendant, Jarquin and Bergner initially gave a false account of events to police, but later made statements corresponding to their testimony.

Defendant's testimony differed from the other eyewitnesses'; he claimed it was Jarquin who yelled "stick him" and that Mitchell had done the stabbing.

Defendant first contends that during closing argument, the prosecution referred to statements Jarquin and Bergner made to police that were consistent with their trial testimony. Defendant contends these statements were erroneously used to bolster the witnesses' credibility and that the error was compounded because the statements had been excluded at trial. The trial judge overruled defendant's objections to their reference in closing argument although he does mention the statements in his findings of fact.

To preserve a question for review, both a trial objection and a written post-trial motion specifying the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) When a party fails to set forth specific grounds in a written motion for new trial, the issue is waived on review in the absence of plain error. *Enoch*, 122 Ill. 2d at 187.

Here the record shows that defendant failed to raise this issue in his post-trial motion for acquittal or new trial. While defendant charged in his post-trial motion that there was an assumption of facts not in evidence, he specified only two instances relating to that issue, neither of which included the issue raised in this appeal. The post-trial motion is deficient since it lacks the specificity required to preserve the alleged error for review. *People v. Harris* (1990), 196 Ill. App. 3d 663, 675, 554 N.E.2d 367.

We may not ignore the clear mandate of the statute that the alleged error be set forth in writing in a motion for new trial. (*Enoch*, 122 Ill. 2d at 187.) Defendant has not met the requirement of the statute (Ill. Rev. Stat. 1989, ch. 38, par. 116—1) and in accordance with *Enoch* has waived this issue on review.

Further, the plain error doctrine is inapplicable here since the evidence is not closely balanced, nor do we find the comments to be of

such magnitude that the defendant was denied a fair trial. See *Harris*, 196 Ill. App. 3d at 675.

■ Defendant next contends that the evidence at trial was insufficient to prove him guilty of murder beyond a reasonable doubt. He argues that the trial court erroneously interpreted the medical evidence, thus negating the possibility that Mitchell, rather than defendant, could have been the assailant.

The trial court found that the pathologist's report demonstrated competent medical evidence that the nature of the stab wound excluded an assailant of Mitchell's short stature, given the location of the wound (54 inches from the ground), the angle of wound and the plane of the blade (straight in and horizontal), and the force of the thrust (hard enough to bruise the skin and pierce a rib). We find the trial court's interpretation of the medical evidence was logical and reasonable.

■ Defendant also contends that he was not proved guilty beyond a reasonable doubt because the testimony of the State's three witnesses was inconsistent, and that their respective impeachments seriously impaired their credibility. He acknowledges that all three testified that defendant stabbed Joyce, but asserts that the balance of their testimony is so contradictory that it raises a reasonable doubt as to what occurred.

While there might be minor discrepancies in the testimony of the three witnesses, there are no discrepancies as to who stabbed Joyce, or the time or place of the occurrence.

After reviewing the evidence in a light most favorable to the prosecution, we find that no rational trier of fact could fail to find defendant guilty beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 48-49, 538 N.E.2d 461.) The testimony of the State's witnesses was supported by and consistent with the trial court's reasonable interpretation of the medical evidence.

■ Defendant next suggests that the single stab to Joyce's chest was not so exceptionally brutal or heinous as to warrant an extended-term sentence of 80 years. We disagree.

A defendant may be sentenced to an extended term if the court finds that the offense was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2).) The statute was not intended to convert every offense into an extraordinary offense subject to an extended-term sentence (*People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025; *People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520), and the conduct must be exceptionally brutal or heinous in its indica-

tion of wanton cruelty. *People v. Price* (1987), 158 Ill. App. 3d 921, 929, 511 N.E.2d 958.

"Heinous" has been defined as "hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal," while "brutal" has been defined as "grossly ruthless," "devoid of mercy or compassion: cruel and cold-blooded." (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344; *Price*, 158 Ill. App. 3d 921, 511 N.E.2d 958.) There is no requirement that defendant's conduct include torturing the victim or inflicting unnecessary pain. (*La Pointe*, 88 Ill. 2d at 501.) Also, a single act which causes death or injury may be sufficient to demonstrate the existence of wanton cruelty. *People v. Barfield* (1989), 187 Ill. App. 3d 190, 202, 543 N.E.2d 812.

Defendant cites several cases in which this court has found the actions of the defendant not so exceptionally brutal and heinous as to merit an extended term. *Price*, 158 Ill. App. 3d 921, 511 N.E.2d 958 (in which defendant, a prostitute, had deliberated before stabbing an unarmed customer four times, leading to his death, then falsely claiming self-defense to rape); *People v. Kane* (1986), 140 Ill. App. 3d 928, 489 N.E.2d 500 (where defendant admitted he planned to kill or rob during the evening that he murdered a cab driver by shooting him once in the back of the head and then robbing him); *People v. Thomas* (1985), 139 Ill. App. 3d 163, 486 N.E.2d 1362 (where the defendant participated in the planned attempted robbery and stabbing death of the victim); *People v. Holiday* (1985), 130 Ill. App. 3d 753, 474 N.E.2d 1280 (where the defendant shot the deceased twice in the chest while committing armed robbery even though the deceased offered no resistance).

Defendant argues that his actions were less brutal or heinous than those of the defendants in these cited cases since he did not plan to commit a crime, arm himself or seek out a victim. He contends that the extended-term sentence is not warranted because his victim was stabbed but once during a confrontation that he did not instigate and which the victim helped escalate.

The trial court provides us with a detailed explanation for the imposition of the extended-term sentence: defendant's urging of Jarquin to stab Joyce; defendant's dispatch of Jarquin to block Joyce's avenue of retreat from the alley; defendant's forceful stabbing that broke one of Joyce's ribs; defendant's failure to offer or obtain any help for Joyce after the stabbing; Joyce's physical and mental suffering as he staggered down the alley and slowly bled to death; and defendant's statement after the stabbing that, "It was the first one and it felt good."

The trial judge also stated that he considered defendant's prior felony convictions; his angry, violent outbursts to the probation officer and his threats to jail officers, which indicate an unwillingness or inability to cooperate in meaningful rehabilitation; and the fact that, from all appearances, defendant is a "very, very dangerous person" who callously and for no apparent reason plunged a knife into a person, knowing it might cause death.

We may not reverse a trial court's determination absent an abuse of discretion. (*Andrews*, 132 Ill. 2d 451, 548 N.E.2d 1025.) When reviewing whether a defendant's sentence is excessive, the entire spectrum of facts surrounding the incident must be analyzed and evaluated, each case on its own particular facts and circumstances. *People v. Bishop* (1989), 179 Ill. App. 3d 99, 103, 534 N.E.2d 401.

In *Andrews*, the supreme court, upholding an extended-term sentence, focused upon the defendant's significant criminal history of violent crimes rather than thefts or burglaries; his callous attitude and complete lack of remorse for the crime; and the premeditation of the murder. (*Andrews*, 132 Ill. 2d at 466.) Cases since *Andrews* have recognized the supreme court's continued focus on a defendant's prior history of violent crimes, his attitude and any expression of remorsefulness in determining whether to impose an extended sentence. *People v. Pirrello* (1991), 207 Ill. App. 3d 208, 216, 565 N.E.2d 324; *People v. Curtis* (1990), 207 Ill. App. 3d 628, 630, 566 N.E.2d 324; *People v. Brown* (1990), 195 Ill. App. 3d 78, 85-86, 551 N.E.2d 1100.

In applying the factors cited in *Andrews* to the instant case, we find that the trial court carefully weighed its decision and that imposition of the extended sentence was not an abuse of discretion.

■ Defendant also argues that the victim impact statement, prepared by Joyce's mother and introduced at his sentence hearing, contained irrelevant and inflammatory information.

We disagree and note that the supreme court decided *People v. Felella* (1989), 131 Ill. 2d 525, 546 N.E.2d 492, after defendant filed his appellate brief. *Felella* allows a victim impact statement to be introduced in noncapital cases, and we find the trial court was not unduly influenced by the statement when it sentenced defendant. *People v. Scott* (1989), 180 Ill. App. 3d 418, 424-25, 535 N.E.2d 1113.

For the foregoing reasons, we affirm the trial court.

Affirmed.

RIZZI and TULLY, JJ., concur.