THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN CAMPBELL *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—89—2484, 1—89—2485 cons.

Opinion filed December 16, 1992.

Rita A. Fry, Public Defender, of Chicago (R.H.R. Silvertrust, Assistant Public Defender, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Michael J. Pugh, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Defendants Jerry Bogan and John Campbell were convicted by a jury of the robbery of Arthur Abrams and were sentenced to prison for 14 years and 6 years, respectively. On appeal, defendants contend that the trial court erred in finding that the State had offered sufficient race-neutral explanations for its exercise of peremptory challenges in excluding African-Americans from the jury.

We affirm the convictions.

During *voir dire*, the trial court questioned 19 prospective jurors before defendants joined in a motion based upon the United States Supreme Court's holding in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, which found that racial or ethnic discrimination in the exercise of peremptory challenges denied a defendant due process.

The trial court had excused 7 of the 19 people for cause. Although the record is somewhat confused, it appears that the trial court completed *voir dire* with respect to the first panel of 13 and the State was apparently satisfied with the panel. Counsel for defendant Bogan exercised a peremptory challenge to exclude one of the prospective jurors; counsel for defendant Campbell exercised peremptory challenges to exclude two prospective jurors; and the State then exercised a peremptory challenge to exclude a prospective juror, K.C. Lee, an African-American. During the questioning, the State had used a peremptory challenge to excuse another African-American, Anthony Jones.

After the *Batson* motion was made, this discussion followed:

"MS. FITZSIMMONS: The only remaining blacks on the venire panel, after the Court excused for cause Mr. Estes, over

my objection, and Mr. Benson, who was not over my objection, he pretty clearly stated that he could not be fair, the only remaining blacks were Mr. Lee and Mr. Jones and those are the only two peremptories that the State has used at this point.

THE COURT: State, do you wish to give racially neutral reasons as to why Mr. Jones and Mr. Lee were excused?"

The State then gave its reasons and the trial court denied defendants' motion, finding no *Batson* violation.

Defendants assert here that the trial court erred in its finding that the State gave racially neutral reasons for excluding the two African-American prospective jurors.

■ We are first concerned with the *Batson* process. *Batson* establishes a three-step analysis to determine whether the State used its peremptory challenges to remove venire members on the basis of race: (1) the defendant must demonstrate a *prima facie* showing of discrimination; (2) after such showing the State must then come forward with a race-neutral explanation for challenging African-American jurors; (3) the trial court determines if the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723; *People v. Hope* (1992), 147 Ill. 2d 315, 321, 589 N.E.2d 503.

To make a *prima facie* showing of purposeful discrimination, defendant must demonstrate that members of a racial group were removed from the venire by peremptory challenges and that the removal, in addition to other relevant circumstances, raises an inference of purposeful discrimination by the State in the selection of the jury. *People v. Andrews* (1992), 146 Ill. 2d 413, 424, 588 N.E.2d 1126.

■ Examples of relevant circumstances include (1) a pattern of strikes against African-American veniremembers; (2) a disproportionate use of strikes against black veniremembers; (3) whether the excluded jurors were a heterogeneous group sharing race as their only common characteristic; (4) the level of black representation in the venire as compared to the jury; (5) the prosecutorial questions and statements during *voir dire* and while exercising challenges; and (6) the races of defendant and victim or of defendant and witnesses. *People v. Garrett* (1990), 139 Ill. 2d 189, 203, 564 N.E.2d 784; *People v. Coulter* (1992), 230 Ill. App. 3d 209, 222, 594 N.E.2d 1163.

Each step in *Batson* ought to be considered only upon the completion of the preceding step. (*People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025.) The State argues that defendants have not fulfilled their burden as to "Step One": establishment of a *prima facie* case of discrimination. Defendants contend that they were not required to do

so, relying upon *Hernandez v. New York* (1991), 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866, which found that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot."

■ However, defendants' argument does not fully consider all of the implications of *Hernandez*. The Supreme Court stated that only where the prosecutor defends his use of peremptory strikes "without any prompting or inquiry from the trial court," and the trial court then rules on whether there has been intentional discrimination, will the issue of defendants' *prima facie* showing become moot. *Hernandez*, 500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866; *People v. Jackson* (1991), 145 Ill. 2d 43, 582 N.E.2d 125, *vacated on other grounds* (1992), ___ U.S. ___, 121 L. Ed. 2d 5, 113 S. Ct. 32; *Coulter*, 230 Ill. App. 3d 209, 594 N.E.2d 1163.

Here, the question that the trial court posed to the State, whether it wished to give racially neutral reasons as to why the two African-Americans were excused, is certainly "prompting" or "inquiry" as *Hernandez* contemplates. Such an inquiry improperly collapses the *Batson* process into a two-step rather than a three-step process. See *Jackson*, 145 Ill. 2d at 101; *Coulter*, 230 Ill. App. 3d at 223.

In *Jackson*, our supreme court clearly stated its policy with regard to the three-step *Batson* process and expressed its frustration with the trial courts of our State in failing to follow its mandate.[1] Furthermore, the *Jackson* court condemned the procedure established by the trial court that required the State to explain the nonracial character of each peremptory challenge at the time of the exercise of the challenge. (*Jackson*, 145 Ill. 2d at 99.) Such a procedure ignores the first-step requirement that the trial court find a *prima facie* showing of purposeful discrimination.

*Coulter* similarly distinguishes *Hernandez* and holds that the trial judge's requirement that the State provide its explanation at the time of the exercise of the peremptory challenge is sufficient to ensure that the first step in the *Batson* process is not moot. However, in

---

[1]In *Jackson*, the supreme court stated: "We have previously cautioned trial courts against collapsing what ought to be a methodical *Batson* hearing procedure into an undifferentiated review of defense and State contentions. [Citations.] It appears we must now caution trial courts against a procedure whereby the first step in the *Batson* analysis is omitted altogether." *Jackson*, 145 Ill. 2d at 98.

*Coulter*, the record provides other "relevant circumstances" which establish a *prima facie* showing of discrimination. *Coulter*, 230 Ill. App. 3d at 223-24.

Since the issue is not moot, we now examine whether defendants properly established a *prima facie* showing of discrimination. Defense counsel's only evidence of discrimination was that the State's two peremptory challenges were both made to African-American veniremembers. One of the two challenged veniremembers had apparently been tendered to defendants and was the victim of a backstrike.

We find that defendants' statement, without more, fails to make the requisite showing of "relevant circumstances" which would indicate that racial discrimination was the motivation for the exercise of the challenge. See *People v. Garrett* (1990), 139 Ill. 2d 189, 203-05, 564 N.E.2d 784; *People v. Beviel* (1992), 250 Ill. App. 3d 361, 364.

Generally, a statement of the mere number of African-American veniremembers peremptorily challenged, without more, will not establish a *prima facie* showing of discrimination. *Garrett*, 139 Ill. 2d at 203; *People v. Mahaffey* (1989), 128 Ill. 2d 388, 413-14, 539 N.E.2d 1172; *Beviel*, No. 1—89—1800, slip op. at 4; *People v. Lyles* (1990), 208 Ill. App. 3d 370, 374, 576 N.E.2d 396.

In *Garrett*, the defendant failed to establish other relevant circumstances leading to the inference of purposeful discrimination required for a *prima facie* showing. The court explained, *inter alia*: (1) the mere fact that some African-American veniremembers are challenged and others accepted by the State, without more, does not constitute a pattern of improper challenges; (2) nor was there a showing that the State challenged black veniremembers disproportionately as compared to white members, or that the level of black representation in the venire exceeded that in the jury; (3) nor were prosecutors' statements or questions during *voir dire* cited which would imply purposeful racial discrimination. *Garrett*, 139 Ill. 2d at 204.

In *Beviel*, this court similarly found that the defendant failed to offer any relevant evidence other than the fact that three blacks were challenged and only one black male remained on the jury. *Beviel*, No. 1—89—1800, slip op. at 6.

In the present case, defendants offered even less evidence of discrimination than did the defendants in *Garrett* and *Beviel*. Defendants here offer no facts other than simply stating that the State used its only two peremptory challenges to excuse two blacks.

All we are able to glean from the record is that the trial court excused seven persons for cause before defendants made their *Batson*

motion. While the record establishes that defense counsel identified Jeffery Estes and Robert Benson as two African-Americans whom the court excused for cause, counsel did not identify the racial composition of the other excused veniremembers, the entire venire or the jury so that we may properly determine if a disproportionate number of African-Americans were excused, if a discriminatory pattern was established or if the level of African-American representation in the venire exceeded that of the jury.

Also, defense counsel failed to provide any other relevant evidence of racial discrimination, for example, that the two excused African-Americans were heterogeneous in every respect except for race; that the State made statements or asked questions during *voir dire* that would imply racial discrimination; or that white veniremembers with similar histories were accepted as jurors. Further, defendants offer no evidence or argument that the race of the defendants, the victim or the witnesses somehow implied racial discrimination.

While the trial court is silent as to whether defendants made a proper *prima facie* showing, we find that they failed to carry their burden in making such a showing.[2]

For all of the foregoing reasons, the defendants' convictions are affirmed.

Affirmed.

TULLY and CERDA, JJ., concur.

---

[2] Even if we were to find that defendants made a proper *prima facie* showing, we find that the trial court's acceptance of the State's explanations was proper and not against the manifest weight of the evidence. We find race-neutral the State's reasons for excluding Anthony Jones: that Mr. Jones was trying to "stare down" the prosecutor by giving him the "evil eye" and that he wore a T-shirt bearing the name of an establishment known among police officers as one where narcotics are suspected of being used. The prosecutor stated that if defendant frequented such an establishment, it suggested little respect for the law. The trial court commented that "the record is clear that there are numerous reasons in the State's mind" why Mr. Jones should have been excluded.

We also find race-neutral the State's explanation for its use of a peremptory challenge against K.C. Lee: that the State understood Mr. Lee to be unemployed (not a very cogent reason, but not necessarily racial), and that the State had, at one point, tendered Mr. Lee to defendants, and thus had been ready to accept him. The trial court recognized that the State backstruck Mr. Lee only after defendants exercised their own peremptory strikes and accepted the State's explanation as race-neutral. We find that the record discloses no evidence that the State was racially motivated in exercising either of these peremptory challenges.