THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEN-
NETH WASHINGTON, Defendant-Appellant.

First District (2nd Division)    No. 1—91—2615

Opinion filed May 30, 1995.

Kenneth N. Flaxman, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Cho, and Gordon Walton, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Kenneth Washington, appeals from a conviction by a jury finding him guilty of aggravated arson and, on a felony murder theory, first degree murder. Defendant appeals, presenting issues of whether the circuit court erred in (1) ruling that the State did not improperly use its peremptory challenges to exclude two jurors on the basis of their race; and (2) imposing sentences on the felony murder count as well as the aggravated arson count.

On February 6, 1991, defendant was charged with three counts of first degree murder (Ill. Rev. Stat. 1991, ch. 38, pars. 9—1(a)(1) through (a)(3) (now 720 ILCS 5/9—1(a)(1) through (a)(3) (West 1992)) and one count of aggravated arson. Prior to trial, the State dismissed two first degree murder counts and proceeded under the felony murder count (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(3) (now 720 ILCS 5/9—1(a)(3) (West 1992))) and the aggravated arson count.

The following trial evidence was adduced. In the early morning hours of January 2, 1991, Chicago firefighters responded to a report of a fire at an apartment building located at 907 West Argyle Avenue, where they found the victim and assisted him out of the building. The victim eventually died of thermal burns and inhalation injuries.

The investigation revealed that the fire had been caused by arson. A witness testified that defendant told her he would kill a man named Mike by "burn[ing] him up." She also saw defendant remove the door knobs from the fire escape exits on January 1, 1991. Defendant's signed written statement, read to the jury, indicates that defendant started the fire and, after realizing that he made a mistake, unsuccessfully tried to put it out.

At the close of the evidence, the jury found defendant guilty of

first degree murder and aggravated arson. Defendant was sentenced to 40 years' imprisonment for first degree murder and to a concurrent term of 20 years for aggravated arson. Defendant timely filed a notice of appeal.

## I

Defendant first contends that the State violated his constitutional rights by using its peremptory challenges to exclude the only two African-American female jurors on the venire. He also asserts that the State's explanation for its use of peremptory challenges was pretextual and failed to meet its burden of showing that the excluded venirepersons exhibited a specific bias to the case.

During *voir dire*, the circuit judge informed counsel that they were allowed seven peremptory challenges. The State accepted the initial panel of 12 jurors and tendered it to the defense. Defense counsel used its peremptory challenges to strike seven venirepersons, four women and three men. The State then used three peremptory challenges to strike three women.

Defense counsel objected to the State's peremptory dismissal of Pauline Merritt and Joan Bogguess because they were the only two African-American women on the panel. The circuit judge asked the assistant State's Attorney for an explanation. The prosecutor explained that Merritt had two children, one of whom was of the "approximate age span" of defendant. Bogguess, the State explained, had male children "close in proximity" to defendant's age. The circuit judge ruled that the State's explanations were race-neutral.

## A

Initially, the State argues that defendant may not object to its peremptory challenges because there is no evidence in the record that establishes the races of the excluded prospective jurors. Absent record evidence that establishes the races of the excluded jurors, defendant may not challenge the State's peremptory challenges as being racially motivated. (*People v. Evans* (1988), 125 Ill. 2d 50, 62, 530 N.E.2d 1360.) Nevertheless, statements by defense counsel that identify the race of excluded venirepersons, particularly when the issue is simply whether defendant has waived the *Batson* issue, may be considered on review. *People v. Andrews* (1989), 132 Ill. 2d 451, 460-61, 548 N.E.2d 1025; *People v. Baisten* (1990), 203 Ill. App. 3d 64, 78-79, 560 N.E.2d 1060.

■ In the case *sub judice*, defense counsel stated, after the State used its peremptory challenges to strike venirepersons Merritt and Bogguess: "I want to object to the dismissal of Ms. Merritt and Ms.

Bogguess. They were the only 2 black women on and there is one black man left." The State did not contest these descriptions. This statement is sufficiently clear to show that Merritt and Bogguess were the only two African-American women on the panel. Because waiver is at issue here, we conclude that defendant did not waive his *Batson* claim.

## B

The next issue is whether defendant established a *prima facie* case of discrimination.[1]

A *prima facie* case of discrimination is established if defendant shows that the prosecutor exercised peremptory challenges to remove from the venire members of a cognizable racial group and all relevant circumstances raise an inference that the prosecutor peremptorily challenged venirepersons on account of their race. (*People v. Edwards* (1991), 144 Ill. 2d 108, 152-53, 579 N.E.2d 336.) Those circumstances deemed relevant in establishing a *prima facie* case of discrimination include: a pattern of strikes against black jurors, the disproportionate use of peremptory challenges against blacks, the level of black representation in the venire as compared to the jury, whether the excluded blacks were a heterogeneous group sharing race as their only common characteristic; and the race of the defendant and victim. (*Edwards*, 144 Ill. 2d at 153.) The circuit court's determination of whether defendant established a *prima facie* case of discrimination will not be overturned unless it is against the manifest weight of the evidence. *People v. Mahaffey* (1989), 128 Ill. 2d 388, 413, 539 N.E.2d 1172.

---

[1]In *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the Court outlined a three-step process for evaluating claims that the State used peremptory challenges in a manner violating the equal protection clause. First, defendant must make a *prima facie* showing that the State exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the State to articulate a race-neutral explanation for striking the jurors in question. Finally, the circuit court must determine whether defendant has carried his burden of proving purposeful discrimination. See generally *Hernandez v. New York* (1991), 500 U.S. 352, 358-59, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1865-66 (*Hernandez*).

The State correctly contends that the preliminary issue of whether defendant had made a *prima facie* showing is not moot because it provided the circuit court with racially neutral reasons as to why the two African-Americans were excused only after "prompting" or "inquiry" from the court. See *People v. Campbell* (1992), 240 Ill. App. 3d 179, 182, 608 N.E.2d 229.

■ The following factors support the circuit court's conclusion that defendant established a *prima facie* case of discrimination.[2] First, two of the three black jurors were excluded. By contrast, only 1 of 19 white jurors was excluded. Second, two of the three peremptory challenges used by the State were against black jurors. Third, of the excluded blacks, their common characteristics, other than their race, were that they had children and lived on the south side. Given that many people live on the south side and have children, those were hardly characteristics so unique as to set them apart from the other jurors. As will be discussed more fully in part I(D) of this opinion, the ages of some accepted jurors' children were also similar to the excused African-American jurors. Finally, the race of the excluded African-American jurors was the same as that of defendant.

The finding of the circuit court that defendant established a *prima facie* case is not against the manifest weight of the evidence.

## C

Next to be considered is whether the State met its burden of providing neutral explanations for challenging the African-American jurors. With regard to this question, the *Hernandez* Court explained:

"A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." (*Hernandez*, 500 U.S. at 360, 114 L. Ed. 2d at 406, 111 S. Ct. at 1866.)

Excluding a prospective juror who has children of an age similar to defendant's is deemed a race-neutral basis for exclusion. *Baisten*, 203 Ill. App. 3d at 79.

■ Here, the prosecutor informed the circuit court that he excluded Merritt and Bogguess because they had children of the approximate age of defendant. Because there is no discriminatory intent inherent on the face of the prosecutor's explanation, the reason offered was race-neutral.

## D

Having recognized a race-neutral basis for the State's exercise of

---

[2]Although it is not entirely clear from the record that the circuit court found that defendant established a *prima facie* case, it is evident that the court specifically asked the prosecutor why it dismissed the African-American jurors. After the prosecutor responded, the court indicated that those were race-neutral reasons, suggesting that the *Batson* framework somehow had been used.

peremptory challenges, the circuit court then was required to determine whether defendant established purposeful discrimination. (*Hernandez*, 500 U.S. at 363, 114 L. Ed. 2d at 408, 111 S. Ct. at 1868.) The circuit court's decision on the ultimate question of discriminatory intent will be accorded great deference on appeal and will be set aside only if clearly erroneous. *Hernandez*, 500 U.S. at 364-65, 114 L. Ed. 2d at 408-09, 111 S. Ct. at 1868-69; *People v. Hope* (1992), 147 Ill. 2d 315, 321, 589 N.E.2d 503.

In the case at bar, the prosecutor told the circuit judge that he excluded the two African-American women, Merritt and Bogguess, from the jury because they had children close in age to defendant. Bogguess stated that she had six children, sons aged 42, 41, and 31 years, daughters aged 29 and 26 years; and one child, aged 39 years, an auto mechanic whose gender is not clearly stated in the record. She also was divorced and worked as a supervisor at the University of Illinois. Merritt had two daughters, aged 23 and 22 years. She worked at a bank, and her husband was a compounder for a corporation. Defendant was 37 years old at the time of the crime, as well as at the time of the trial.

The State contends that the prosecutor at trial "mistakenly thought one of Merritt's two children and five of Bogguess' six children were all males of the approximate age of defendant." The State recognizes that Merritt's daughters are neither males nor within the approximate "age span" of defendant, but reasons that because the prosecutor's mistake was never corrected by the circuit court or defense counsel, the court was entitled to accept the prosecutor's race-neutral explanation and conclude that there was no discriminatory intent.

It is clear that Bogguess had three and possibly four sons of an age close to that of defendant. This factor has been held to be a race-neutral basis for exclusion. (*Baisten*, 203 Ill. App. 3d at 79.) The circuit court's determination that defendant failed to establish purposeful discrimination with respect to Bogguess is not clearly erroneous.

The State's exclusion of Pauline Merritt, who had daughters ages 23 and 22, is more troubling. There were five questioned venirepersons who had children of the age of Merritt's children or older that the State did not choose to exclude through its use of peremptory challenges. Of these five, three served on the jury during defendant's trial. Elaine Booher lived on the north side of Chicago, and her husband is a retired civil attorney. She had a son, age 31 years, and a daughter, age 28. Charles Cope lived in the northwest suburbs and

was retired. He used to work in quality control, and his wife was a retired school teacher and copywriter. He had a son, age 37 years, and a daughter, age 35. Sandra Degler lived in the northwest suburbs and worked in a library for a school district. Her husband was a computer systems analyst for a corporation. She had two daughters very similar in age to Merritt's daughters, namely 22 and 17 years.

■ From the foregoing, defendant concludes that the prosecutor's explanation was "pretextual or contrived" because other jurors who had male children closer in age to defendant were not similarly excused. We agree. "[T]he exclusion of even just one minority venireperson on account of race is unconstitutional and *** require[s] reversal of the conviction below." *People v. Harris* (1989), 129 Ill. 2d 123, 175, 544 N.E.2d 357; *People v. McDonald* (1988), 125 Ill. 2d 182, 200-01, 520 N.E.2d 1351.

Accordingly, the determination of the circuit court must be reversed and the cause remanded for a new trial.

## II

Defendant's second contention is that his conviction for aggravated arson should be vacated because it is a lesser included offense of felony murder, for which he was also convicted, citing *People v. Rosario* (1988), 166 Ill. App. 3d 383, 519 N.E.2d 1020, in support of his argument. The State asserts that because defendant failed to object to the imposition of the sentences, or include this argument in his post-trial motion, it is waived.

In *People v. Cardona* (1992), 240 Ill. App. 3d 110, 124-27, 608 N.E.2d 81, *rev'd in part & vacated in part on other grounds* (1994), 158 Ill. 2d 403, 634 N.E.2d 720, this issue was addressed in the context of convictions for felony murder and the predicate felony of residential burglary. There, we recognized that the appellate courts of Illinois are in direct conflict on this issue. We held that in the case of felony murder, the underlying felony is a lesser included offense because the felony is established by proof of the same or less than all of the facts required to establish the offense of the felony murder. (*Cardona*, 240 Ill. App. 3d at 124-25; see Ill. Rev. Stat. 1991, ch. 38, par. 2—9 (now 720 ILCS 5/2—9 (West 1992)).) In so holding, we found that *People v. Green* (1975), 62 Ill. 2d 146, 340 N.E.2d 9, on which the State here relies heavily, was implicitly overruled by *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477. Since the prosecution here based the felony murder charge on aggravated arson, the conviction for aggravated arson must be vacated.

Our determination also is consistent with the recent decision in *People v. Novak* (1994), 163 Ill. 2d 93, 643 N.E.2d 762, in which the

supreme court reaffirmed that, in Illinois, courts use the "charging instrument" approach in deciding whether a particular offense is a lesser included offense of another. (*Novak*, 163 Ill. 2d at 112-13.) Under this approach, "an offense is deemed to be a lesser included offense if it is described by the charging instrument," and the lesser crime need not be a "theoretically or practically 'necessary' part of the greater crime." (*Novak*, 163 Ill. 2d at 107.) Here, the charging instrument for the offense of felony murder clearly describes the offense of aggravated arson. The State recognizes this point, but maintains that this court must follow *Green*. For the reasons stated above, we decline to do so.

Failure to object or to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124), except where plain errors or defects affect substantial rights. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) Plain error occurs when the alleged error is so substantial as to reflect adversely on the fairness and impartiality of the trial. *People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241.

■ The double jeopardy clause protects against multiple punishments for the same offense (U.S. Const., amend. V; *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 23 L. Ed. 2d 656, 665, 89 S. Ct. 2072, 2076) and prohibits punishment both for an offense and a lesser included offense. (*United States v. Stavros* (7th Cir. 1979), 597 F.2d 108, 112, citing *Brown v. Ohio* (1977), 132 U.S. 161, 168, 53 L. Ed. 2d 187, 196, 97 S. Ct. 2221, 2227.) Because of the unfairness apparent in defendant's multiple convictions, this court finds plain error here. (See *Stavros*, 597 F.2d at 111.) For the same reason, this error cannot be considered harmless.

We conclude that the circuit court erred in entering a conviction against defendant for aggravated arson.

For the reasons discussed above, defendant's convictions must be reversed and the cause remanded for a new trial.

Reversed and remanded.

SCARIANO, P.J., and McCORMICK, J., concur.