THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES BOHANAN, Defendant-Appellant.

First District (4th Division)   No. 1—90—2672

Opinion filed February 25, 1993.—Supplemental opinion
filed December 1, 1994.

Michael J. Pelletier and Pamela Z. O'Shea, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Linda Woloshin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a trial by jury in the circuit court of Cook County, defendant, James Bohanan, was convicted of attempted first-degree murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(a), 9—1), two counts of armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2(1)), and two counts of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a)). Judgment was entered on the count of attempted first-degree murder and on one count of armed violence, the other convictions merging.

He was sentenced to two concurrent terms of 12 years each in the Illinois Department of Corrections.

On appeal, the singular issue on review is whether the trial court erred in finding divorce to be a sufficiently race-neutral reason to exclude two African-American women from the jury, but insufficient to exclude an African-American man from the jury.

We remand with directions.

Jury selection was conducted on June 21, 1990. The trial court questioned 27 venirepersons both generally and specifically. After completion of the questioning, the State exercised its peremptory challenges. Defense counsel subsequently made a *Batson* motion based on the State's exclusion of two African-American women and one African-American man. The trial court asked the prosecutor for "some cogent reasons."

In response to this request, the prosecutor stated that the two women were divorced and that they paid particular attention to defense counsel. He also stated that the women, Barbara Morris and Doris Lammie, lived on the south side of the city in proximity to the scene of the attempted murder. The trial judge determined that although the two women did, indeed, live on the south side, they resided nowhere near the scene. He further refused to accept the fact that the women paid particular attention to defense counsel. Accordingly, he rejected these reasons for excluding the women. However, the trial judge never enunciated a specific ruling as to the sufficiency of divorce as a race-neutral reason for exclusion of the women and they did not sit on the jury.

The prosecutor also offered divorce as a reason for excluding the man, James Smith. Additionally, he stated that Smith slouched in his chair, rented his home, and was employed as a security guard. The trial court explicitly refused to accept all of the aforementioned reasons for rejecting James Smith and placed him on the jury. The prosecutor then withdrew his challenge to Smith and the jury was sworn.

*Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, suggested that the use of peremptory challenges to systematically exclude African-Americans from the jury might violate the equal protection clause of the fourteenth amendment. This suggestion was codified over two decades later in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, which specifically prescribed a series of elements which must be successfully fulfilled before a finding of purposeful discrimination is leveled against a prosecutor.

A *Batson prima facie* case of intentional discrimination is established by the initial showing that the defendant and the excused venirepersons are members of a cognizable racial group. Secondly, the defendant must demonstrate that all relevant circumstances create an

inference of discrimination in the exclusion of veniremembers based on race. Relevant circumstances may include a pattern of strikes against black jurors, or a prosecutor's questions and statements to the venire during examination which may reflect the existence of discrimination. It is the province of the trial court to determine whether the defendant has proved his *prima facie* case. *People v. Evans* (1988), 125 Ill. 2d 50, 63; see also *People v. Fauntleroy* (1991), 224 Ill. App. 3d 140; *People v. Lovelady* (1991), 221 Ill. App. 3d 829; *People v. Walls* (1991), 220 Ill. App. 3d 564.

If a *prima facie* case is deemed established, the onus is on the prosecutor to articulate race-neutral explanations for the exclusion of the challenged venirepersons. The trial court must then make an assessment of the prosecutor's proffered reasons rebutting the defendant's case in consideration of all the relevant circumstances. Ultimately, the trial court will make a final determination as to the existence of purposeful discrimination. (*People v. Valentine* (1991), 221 Ill. App. 3d 1082, 1084; *People v. Johnson* (1991), 218 Ill. App. 3d 967, 977.) If the trial court finds, *prima facie*, that the prosecutor purposefully discriminated in the selection of veniremembers, the defendant's conviction will be reversed. *Batson v. Kentucky* (1986), 476 U.S. 79, 100, 90 L. Ed. 2d 69, 90, 106 S. Ct. 1712, 1725.

In the case at bar, the trial court failed to conduct a hearing in accordance with the aforementioned procedure as promulgated by *Batson*. The record illustrates the following dialogue:

> "[DEFENSE COUNSEL]: Judge, I have a motion for *Batson* which is commonly known as a *Batson* motion. It is my understanding that the State has excluded two black females.
>
> [THE COURT]: And one black male.
>
> [DEFENSE COUNSEL]: And one black male.
>
> [THE COURT]: Mr. State's Attorney, give me some cogent reasons."

It is evident from this exchange that the trial judge never allowed defense counsel to establish a *prima facie* case. "It is settled that a *Batson prima facie* case cannot be established merely by the numbers of black venirepersons stricken by the prosecution." (*People v. Lovelady* (1991), 221 Ill. App. 3d 829, 837; see also *People v. Evans*, 125 Ill. 2d 50 (and cases cited therein).) Defense counsel should have been afforded the opportunity to demonstrate the existence of "all relevant circumstances" giving rise to an inference of purposeful discrimination. Inappropriately, the trial court overlooked this crucial component in the *Batson* proceeding and immediately demanded "some cogent reasons" for the exclusion of the venirepersons. The trial court's

actions, in this instance, indicate an unfortunate misunderstanding that numbers alone are sufficient to establish a *prima facie* case. *People v. Mahaffey* (1989), 128 Ill. 2d 388, 414.

Although the *Batson* Court declined to outline a procedure to implement its holding (see *Batson*, 476 U.S. at 99 n. 24, 90 L. Ed. 2d at 90 n. 24, 106 S. Ct. at 1725 n. 24), this "collapse" of the *Batson* procedural steps into an evaluation of State and defense contentions is incorrect. "It is clear from *Batson* \*\*\* that the Court envisioned a methodical step-by-step application of its standards for judging whether purposeful jury discrimination has occurred." *People v. Hope* (1990), 137 Ill. 2d 430, 456.

The weighing of the State's explanations at the *prima facie* stage of the proceeding is manifestly improper. This contemporaneous evaluation of the State's explanations may not act as a thumb on the scales while a defendant's own *prima facie* case is being weighed to see whether such explanations will even be required. (*Hope*, 137 Ill. 2d at 459.) Examination of the State's reasons under these circumstances would, in effect, render the *Batson* standards insignificant. It is thus improper to allow the prosecutor's explanations to interfere with the trial court's evaluation of the defendant's showing of a *prima facie* case.

Defendant places mistaken reliance on *Hernandez v. New York* (1991), 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859, in contending that a *prima facie* case was established regardless of the consolidation of the *Batson* steps. According to *Hernandez*, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges *and* the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot." (Emphasis added.) (*Hernandez*, 500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866.) In the instant case, although the prosecutor offered reasons for the exclusion of the three venirepersons, the trial court never ruled on the ultimate issue of purposeful discrimination. Consequently, as the second part of the *Hernandez* test remained unsatisfied, the *prima facie* showing never became moot.

The State relies on *People v. Garrett* (1990), 139 Ill. 2d 189, and maintains that because the trial judge never ruled that a *prima facie* case had been established, we should consider, in view of all the circumstances, whether he could have concluded the existence of a *prima facie* case. The State further argues in accordance with *Garrett* that if we find that a *prima facie* case has not been estab-

lished, there is no need to remand the cause for a "proper *Batson* hearing." *Garrett*, 139 Ill. 2d at 205.

The facts in *Garrett* are easily distinguishable from those in the case at bar. In *Garrett*, the court gave the defendant a full opportunity to make his *prima facie* case of discrimination after which the court determined that he failed to meet his burden. In the instant case, conversely, defendant was never afforded an opportunity to establish a *Batson prima facie* case. This lack of opportunity is a direct consequence of the trial court's premature request for the prosecutor's reasons for excluding the veniremembers.

Furthermore, *Batson* clearly places the duty of determining the existence of a *prima facie* case on the trial court. Here, the court never made such a determination. We are not unmindful of defendant's failure to err in this instance. As the threshold issue of a *prima facie* case was unresolved, we remand for an expedited hearing in accordance with the *Batson* decision.

Initially, the trial court must make a finding regarding defendant's showing of a *prima facie* case. At this stage of the proceeding, defendant may substantiate his claim with any additional evidence of purposeful discrimination. If the *prima facie* burden is met, the trial court must then consider the second prong of the test, *i.e.*, evaluating the race-neutrality of the State's proposed reasons for the exclusion of the venirepersons.

Upon completion of the preceding steps, the trial court must make both credibility and factual determinations based on the proffered evidence. These findings, including the record, shall be filed with the clerk of this court within 60 days of the filing of this opinion. This court retains jurisdiction for the purpose of reviewing the trial court's determinations pursuant to *Batson*. Both defendant and the State will be permitted to submit supplemental briefs relative to this issue in this court. *People v. Jones* (1988), 177 Ill. App. 3d 663, 669; *People v. Buckley* (1987), 168 Ill. App. 3d 405, 413.

Remanded with directions.

HOFFMAN and CAHILL, JJ., concur.

## SUPPLEMENTAL OPINION

JUSTICE JOHNSON delivered the opinion of the court:

Defendant now appeals from the remandment, asserting (1) the trial court considered the race-neutral reasons for excluding the ju-

rors in question before he was afforded an opportunity to establish his *prima facie* case of purposeful discrimination; and (2) he was denied effective assistance of counsel as defense counsel invited the trial court to disregard this court's opinion and failed to present evidence to support his argument.

In our original opinion (*Bohanan I*), we found that the trial court improperly considered the State's race-neutral reasons for using its peremptory challenges to exclude the particular venirepersons before allowing defendant to demonstrate a *prima facie* case of purposeful discrimination. We clearly stated:

> "The weighing of the State's explanations at the *prima facie* stage of the proceeding is manifestly improper. This contemporaneous evaluation of the State's explanations may not act as a thumb on the scales while a defendant's own *prima facie* case is being weighed to see whether such explanations will even be required. [Citation.] Examination of the State's reasons under these circumstances would, in effect, render the *Batson* standards insignificant. It is thus improper to allow the prosecutor's explanations to interfere with the trial court's evaluation of the defendant's showing of a *prima facie* case." *People v. Bohanan* (1993), 243 Ill. App. 3d 348, 351.

Although we clarified the error in the trial court's conduct in *Bohanan I* and even outlined the procedure to be followed on remand, the trial court failed to conduct the hearing in accordance with our mandate. Initially, defense counsel asserted that a *prima facie* showing of purposeful discrimination could be made considering the transcript of the pretrial proceedings. The prosecutor was then allowed to respond to defense counsel's argument and he contended that the incompleteness of the record made it impossible to establish a *prima facie* showing. At the conclusion of the arguments of both sides, the trial court stated in relevant part: "I find that there has been no *prima facie* case that has been made. I believe that the totality of the circumstances *** shows that there was no purposeful discrimination shown in the exercise of the [peremptory] challenges against these women."

Consequently, the trial court committed the same error at the hearing on remand as it did in the original pretrial proceeding. It again improperly considered the State's race-neutral reasons for excluding the venirepersons before ruling on the question of defendant's establishment of a *prima facie* case. In fact, the trial court explicitly and erroneously stated: "I believe that this Court is al-

lowed to listen to the explanations of the State in trying to arrive at a decision as to whether or not there is a prima facie case and by eventually ruling—saying there was no Batson finding, because I didn't use the actual word there is no prima facie case." This procedure is precisely such that this court characterized as "manifestly improper" (*People v. Bohanan* (1993), 243 Ill. App. 3d 348, 351), and such that this court specifically directed the trial court to correct at the *Batson* hearing on remand.

We unequivocally declared:

"Initially, the trial court must make a finding regarding defendant's showing of a *prima facie* case. At this stage of the proceeding, defendant may substantiate his claim with any additional evidence of purposeful discrimination. If the *prima facie* burden is met, the trial court must then consider the second prong of the test, *i.e.*, evaluating the race-neutrality of the State's proposed reasons for the exclusion of the venirepersons.

Upon completion of the preceding steps, the trial court must make both credibility and factual determinations based on the proffered evidence." *Bohanan*, 243 Ill. App. 3d at 352.

As the trial court neglected to follow our previous mandate, we reverse its findings and remand the cause for a second time and again instruct the trial court to follow the procedures we clearly articulated in *Bohanan I*.

Reversed and remanded with directions.

HOFFMAN, P.J., and CAHILL, J., concur.