THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VICTOR THORNTON, Defendant-Appellant.

First District (3rd Division)   No. 1—91—3608

Opinion filed December 29, 1993.

Rita A. Fry, Public Defender, of Chicago (Greg Koster, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Linda Woloshin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Victor Thornton, was found guilty of robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—1) in a jury trial and sentenced to six years' imprisonment.

The sole issue for review on appeal is whether the trial court erred in finding that the State's explanations for its use of peremptory challenges to strike three African-Americans from the venire were race-neutral. (*Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) We reverse and remand for a new trial.

During *voir dire*, the State exercised two peremptory challenges to dismiss Alberta Pitts and Vida Baker immediately after the first panel of six venirepersons was examined. The State then petitioned for the removal of one juror for cause. After the second panel of venirepersons was questioned, the State again exercised two peremptory challenges, one to excuse Cynthia Murphy and the other to excuse P.I. Conway.

After the jury was impanelled but before it was sworn, defense counsel moved for a mistrial on the basis that the State had purposefully discriminated against three African-Americans when the prosecution exercised three of its peremptory challenges to dismiss Pitts, Baker and Murphy from the jury, in violation of *Batson*. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.

The prosecutor objected to defense counsel's *Batson* motion on the basis that the motion was untimely. The State's objection, however, was overruled and defendant's motion for a mistrial was denied. The trial court did not conduct a formal *Batson* hearing. The trial judge did state, however, that although it was not "clear" that defendant met his burden of establishing a *prima facie* case, the safest course would be for the State to articulate its reasons for using peremptory challenges to dismiss three African-Americans. The State complied with the trial court's request.

First, the prosecution gave its justification for excluding Pitts. The prosecutor stated that Pitts' husband was a counselor in an alcohol and drug addiction rehabilitation program. The prosecutor stated that Pitts admitted having once attended this rehabilitation program. The State maintained that it excused Pitts because it believed that most robberies are committed by people who need money to purchase drugs and that Pitts, as a former participant in a substance abuse rehabilitation program, would be sympathetic to a person who would commit the type of robbery that defendant in the present case was accused of committing.

Second, the prosecution maintained that Baker was excused because she was 77 years old, making her incapable of understanding the issues before the court and unable to sit through the trial. The

State also maintained that it excused Baker because her religious beliefs, as manifested by her active participation in a Seventh Day Adventist Church, would hinder her ability to make a fair decision in regard to defendant's guilt or innocence.

Next, the prosecutor told the trial court that it used a peremptory challenge to excuse Murphy, a former hospital pharmacy technician, because her employment at the hospital had ceased two months earlier and that he believed she could not be a fair and impartial juror since her employment record appeared to be "somewhat questionable" and because there were probably "other circumstances *** which led to her dismissal."

Finally, the prosecutor noted that 7 of the 27 venirepersons who had been questioned were African-American and that defendant dismissed an African-American venireperson for cause. The trial court concluded that the explanations offered by the prosecution were race-neutral.

Defendant's trial on the merits then commenced before the jury. The State presented the testimony of Sandra Dunlap, Michelle Henry and Chicago officer Michael Cummings. Dunlap and Henry testified that they were walking south on State Street near 31st Street on June 10, 1991, when defendant ripped Dunlap's blouse and yanked a gold chain off of her neck. Dunlap and Henry testified that after defendant fled, they found a police officer, told him that Dunlap had been robbed and described the offender.

Officer Cummings testified that he spotted defendant soon thereafter walking through a parking lot at the intersection of 26th Street and South Michigan Avenue. Officer Cummings stated that defendant was dressed in the manner described by Dunlap and Henry and that he was out of breath and perspiring. Officer Cummings testified that he arrested defendant and that Dunlap and Henry later identified defendant while he sat in a squad car. Defendant then testified in his own behalf. The jury returned a guilty verdict and the trial court sentenced defendant to six years' imprisonment.

Defendant contends on appeal that he established a *prima facie* case of discrimination by the State in the exercise of its peremptory challenges and that the trial court erred in concluding that the State presented race-neutral explanations for dismissing African-Americans. Specifically defendant argues that the trial court erred in ruling that the State's explanations for using peremptory challenges to dismiss Pitts, Baker and Murphy were race-neutral.

The State maintains that the trial court properly denied defendant's *Batson* motion because he failed to establish a *prima facie* case of purposeful discrimination and because it articulated le-

gitimate race-neutral reasons for dismissing the three African-Americans. The State argues that the trial court's ruling was proper even though the court examined race-neutral explanations in the absence of a "clear cut" finding that defendant met his burden of proving a *prima facie* case.

A defendant must establish a *prima facie* case of purposeful discrimination in order to prevail on a claim of unconstitutional discrimination in the exercise of peremptory challenges. *(Batson v. Kentucky* (1986), 476 U.S. 79, 96, 90 L. Ed. 2d 69, 87, 106 S. Ct. 1712, 1723; *People v. Jackson* (1991), 145 Ill. 2d 43, 99, 582 N.E.2d 125, 151; *People v. Carr* (1992), 225 Ill. App. 3d 170, 173, 587 N.E.2d 543, 546.) In order to establish a *prima facie* case of discrimination, a defendant need only prove relevant circumstances which raise a reasonable inference that the State used a peremptory challenge to exclude a member of the venire on the basis of race. *Powers v. Ohio* (1991), 499 U.S. 400, 417, 113 L. Ed. 2d 411, 429, 111 S. Ct. 1364, 1373; *People v. Sprawls* (1992), 240 Ill. App. 3d 165, 167, 608 N.E.2d 129, 131; *People v. Kindelan* (1991), 213 Ill. App. 3d 548, 552-55, 572 N.E.2d 1138, 1140-42.

Once a defendant has made a *prima facie* showing, the burden shifts to the State to articulate legitimate race-neutral reasons for exercising its peremptory challenges to exclude African-Americans. *(Batson,* 476 U.S. at 98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1724; *Carr,* 225 Ill. App. 3d at 173, 587 N.E.2d at 546.) The trial court will then determine if defendant has established that there was purposeful discrimination on the part of the State. *(People v. Nicholson* (1991), 218 Ill. App. 3d 273, 278-79, 577 N.E.2d 1313, 1317.) Once a prosecutor has offered a race-neutral explanation for each peremptory challenge and the trial court has ruled on the issue of alleged intentional discrimination, however, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot. *Hernandez v. New York* (1991), 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866.

Thus, in the present case, the question of whether defendant proved a *prima facie* case is moot because the State offered race-neutral explanations for dismissing the venirepersons in question. We shall therefore review the State's reasons to determine if they are race-neutral.

First, the prosecutor articulated the following reason for dismissing Baker: "She was excluded because of her age, that being seventy-seven years old." The record therefore plainly reveals that venireperson Baker was dismissed on the basis of her age. Age, however, is not a bar to serving on a jury and is not a legitimate race-neutral reason for dismissing a venireperson.

Moreover, the record shows that Baker gave detailed comprehensive answers to the court's questions during *voir dire*. Baker was responsive to the court's questions, as evidenced by the following colloquy:

"THE COURT: I notice that you have a—
BAKER: Accent.
THE COURT: An accent.
BAKER: I was born in the West Indies, Jamaica.
THE COURT: How long have you been in Cook County?
BAKER: In Cook County? I came from England. I was in England for two years and I came to New York in 1975 and then I lived there for a while and then in 1972 I came to—1952 I came to New York and in 1975 I married Mr. Baker and moved to Chicago."

Baker's answers to these questions and to other questions do not suggest in any way that she was a doddering prospective juror. Thus, her age was plainly not a factor in her recusal.

We next address what occurred as to Murphy. In its entirety the colloquy between the court and Murphy during *voir dire* reads as follows:

"THE COURT: You are single and right now you're not working. You are between jobs. When you work, you work as a pharmacy tech?
MURPHY: Yes.
THE COURT: What does that entail?
MURPHY: Anything the pharmacist doesn't do, fill orders, do the delivery throughout the hospital.
THE COURT: Do you have to be licensed by the State of Illinois to do that?
MURPHY: Yes.
THE COURT: Are you licensed?
MURPHY: Yes, sir. I am.
THE COURT: What type of education and training do you have to prepare you for that?
MURPHY: Training for two years when we first start.
THE COURT: Is that after high school?
MURPHY: Yes.
THE COURT: Where did you get your training?
MURPHY: Rush-Presbyterian-St. Luke's Medical Center.
THE COURT: When was the last time you worked?
MURPHY: Last time, July 20.
THE COURT: Do you rent where you're at now?
MURPHY: Right.
THE COURT: All the other questions you have answered in the negative. Do you belong to any special interest groups?

MURPHY: No, sir.

THE COURT: Or community organizations of any kind?

MURPHY: No, sir.

THE COURT: What types of things do you like to do or read in your spare time?

MURPHY: Romance novels. That's about it.

THE COURT: Is there anything in your personal history or your background that in any way would prevent you from being fair and impartial in this matter?

MURPHY: No."

The prosecutor later told the trial judge that Murphy was dismissed for the following reason: "She *** stated she last worked on July 20th and for some reason is not employed in that position any more. We felt that that was somewhat questionable and maybe other circumstances are behind that which led to her dismissal from that job ***." There is no indication in the record, however, that Murphy was fired from her employment or that she was dismissed from her job as the result of misconduct.

Mere unemployment is not a race-neutral reason for the exclusion of a person from jury service. We are mindful that the Illinois Supreme Court in *People v. Andrews* (1993), 155 Ill. 2d 286, 300-02, 614 N.E.2d 1184, 1192-93, held that the State may exercise a peremptory challenge to dismiss a venireperson on the basis of his or her "lengthy unemployment." *Andrews*, however, is distinguishable from the present case because the venireperson in *Andrews* had been unemployed for seven years while Murphy was unemployed for only two months. We conclude that the State's dismissal of Murphy on the alleged basis of her unemployment was pretextural and not race-neutral.

The exclusion of even one African-American on the basis of race is unconstitutional and cause for reversal. (See *People v. Nicholson* (1991), 218 Ill. App. 3d 271, 278, 577 N.E.2d 1313, 1317.) Accordingly, the trial court's ruling that the State's explanations for the use its peremptory challenges were race-neutral was erroneous. The judgment is therefore reversed and the cause remanded for a new trial.

Reversed and remanded.

TULLY, P.J., and CERDA, J., concur.