THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT THOMAS, Defendant-Appellant.

First District (4th Division)   No. 1—92—3718

Opinion filed September 29, 1994.

JOHNSON, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Cheryl K. Lipton, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E.

Fitzgerald, and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The defendant, Robert Thomas, appeals from a jury's verdict convicting him of two counts of first degree murder, two counts of theft, and one count of aggravated possession of a stolen motor vehicle. (Ill. Rev. Stat. 1991, ch. 38, pars. 9—1(a)(2), 16—1(a)(1); ch. 95$^1$/2, par. 4—103.2(7).) We consider: (1) whether it was clearly erroneous for the trial judge to find that the State did not discriminate on the basis of race when it exercised its peremptory challenges during jury selection; (2) whether the State's closing argument appealed to the jury's passion and prejudice and misstated the law; (3) whether it was plain error to give the jury the concluding jury instruction which was a modified pattern instruction and the first degree murder issues instruction; and (4) whether the State presented sufficient evidence to convict the defendant of first degree murder beyond a reasonable doubt. For the following reasons, we affirm.

The defendant was tried for two counts of first degree murder, two counts of felony murder based on theft, aggravated possession of a stolen motor vehicle, and two counts of theft. The State presented the following evidence in a jury trial.

On February 4, 1991, at about 7 p.m., a sales clerk in a department store saw a woman take merchandise from the racks and run out the exit doors into a silver Riviera. There were two other people in the car, and the car sped away. At about the same time, in a different department store in the same shopping mall, a security guard saw two women take armloads of merchandise from the store without paying for it. The guard saw the women jump into a silver Buick Riviera which was being driven by a man, and he saw part of the license plate number. He notified the police.

An off-duty police officer who was driving home from work in his car heard a report of the incident over his portable police radio. As he was driving, he noticed a blue Buick Riviera travelling on the same street with three people inside. The driver of the Riviera was later identified as the defendant. As the Riviera was travelling down the street, the passengers repeatedly looked forward and backward. The officer notified the dispatcher that he was following possible suspects.

While the off-duty officer was following the car, the defendant went through a red light. Because he was leaving his jurisdiction, the officer requested assistance from other police departments. Another

officer in a police car responded and the two cars were following the defendant's car; they were travelling at about 45 to 50 miles per hour. When the defendant saw a police car pass him in the opposite direction, he abruptly changed lanes directly in front of the police car that was following him. The police car then turned its siren and emergency lights on and the defendant pulled his car over and stopped. However, when the officer left the police car and approached the defendant's car, the defendant sped away.

The defendant resumed driving at a high rate of speed in the left lane of the street while there was traffic on both sides of the street. He drove toward and around a police car which was on the median and drove into oncoming traffic, almost striking another car. He then returned to the right side of the street, where the traffic was heavily congested, and passed through an intersection. The defendant was travelling at 70 miles per hour, and at this point, several police cars were following with their sirens and emergency lights activated.

Before the next intersection, there was an overpass where the road dipped down and came back up a hill. When the off-duty police officer was asked at trial whether he could see "what [was] going on" in the intersection as he drove up the hill, he testified that he could not. The defendant did not attempt to slow down at the intersection even though the traffic light was red. The cross street traffic had a green light. The defendant went through the red light and collided with a car that was travelling in the cross traffic. The two people in that car, Eugene and Janet Strepek, died as a result of the injuries they sustained in the collision.

Subsequently, the police determined that the car the defendant was driving was stolen and the merchandise taken from the stores was found in the car. The merchandise taken from each store exceeded $300.

The defendant did not present evidence.

The jury returned a verdict of guilty of two counts of first degree murder, guilty of aggravated possession of a stolen motor vehicle, and guilty of two counts of theft. After his post-trial motion was denied, the defendant was sentenced to prison terms of natural life without possibility of parole for the two counts of first degree murder, 15 years for aggravated possession of a stolen motor vehicle, and five years for each count of theft. He now appeals.

OPINION

I

The defendant argues that the State denied him the right to

equal protection when it exercised five peremptory challenges to exclude black venirepersons from the jury.

The equal protection clause prohibits the State from exercising its peremptory challenges to discriminate against prospective jurors on the basis of race. (*Batson v. Kentucky* (1986), 476 U.S. 79, 85, 90 L. Ed. 2d 69, 80, 106 S. Ct. 1712, 1716-17.) In *Batson*, the Court established a procedure for resolving a defendant's claim that the State used its peremptory challenges to discriminate against venirepersons of a certain race. The defendant must first present a *prima facie* case of purposeful discrimination in the State's use of its peremptory challenges. (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87, 106 S. Ct. at 1723.) If the trial judge finds that the defendant made that showing, the burden shifts to the State to provide a clear and reasonably specific race-neutral explanation for challenging each venireperson. (*Batson*, 476 U.S. at 98 n.20, 90 L. Ed. 2d at 88 n.20, 106 S. Ct. at 1724 n.20.) The trial judge must then consider those reasons and determine if the defendant established that the State exercised its peremptory challenges to purposefully discriminate against venirepersons on the basis of race. (*Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1724.) "[T]his two-step procedure should not be collapsed into a single, unitary disposition that dilutes the distinctions between a defendant's *prima facie* showing of discrimination and the State's production of neutral explanations for its peremptory challenges." *People v. Wiley* (1993), 156 Ill. 2d 464, 475, 622 N.E.2d 766, 771; see also *People v. Bohanan* (1993), 243 Ill. App. 3d 348, 612 N.E.2d 45.

When the defendant in this case moved for mistrial under *Batson*, the State had exercised four of its peremptory challenges against black venirepersons. The defendant based his motion on the fact that he was also black, the excluded venirepersons had different backgrounds, and the State's witnesses were white. The trial judge responded: "[A]lthough I don't believe that there is a *prima facie* case made at this point [in] time, I believe that there would be certain panels under the Illinois Appellate Court First District that would substitute my opinion. So I am going to require the State to state the reasons why these jurors were excused." After the State gave its reasons for striking the four venirepersons, the judge stated: "I have not found that there was even a *prima facie* case based on my opinion," and then discussed why he believed the State presented race-neutral reasons for striking each of the venirepersons. In denying the defendant's motion, the judge noted: "So again I have not found a *prima facie* case. I believe the reasons are legitimate reasons." Subsequently, the defendant renewed the motion after the

State used a fifth peremptory challenge against a black venireperson. The judge requested the State's response and the State presented its reasons for excluding the venireperson. Without deciding whether the defendant established a *prima facie* case, the judge found that the State's reason for excluding the venireperson was race-neutral and denied the renewed motion.

■ Generally, the first question in reviewing a *Batson* claim is whether the defendant presented a *prima facie* case that the State purposefully discriminated against certain venirepersons in exercising its peremptory challenges. However, the defendant in the present case contends that this court need not address whether he established a *prima facie* case because that issue became moot when the State offered its reasons for exercising the peremptory challenges and the trial court ruled on the ultimate issue of intentional discrimination. The State maintains that the issue is not moot because the trial judge prompted the State to present its reasons for exercising the challenges.

The dispute between the defendant and the State stems from the United States Supreme Court case of *Hernandez v. New York* (1991), 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859. In *Hernandez*, the Court considered the petitioner's claim that the State discriminated against certain venirepersons based on their race. The Court stated:

> "The prosecutor defended his use of peremptory strikes without any prompting or inquiry from the trial court. As a result, the trial court had no occasion to rule that petitioner had or had not made a prima facie showing of intentional discrimination. This departure from the normal course of proceeding need not concern us. *** Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359, 114 L. Ed. 2d at 405, 111 S. Ct. at 1866.

The Court in *Hernandez* did not specifically limit its holding to cases where the trial judge prompted the prosecutor to present race-neutral reasons for the challenge.

The Illinois Supreme Court has applied *Hernandez* and found the *prima facie* issue was moot in cases where the trial judge prompted the State to present neutral reasons for exercising the challenge. (*People v. Hudson* (1993), 157 Ill. 2d 401, 626 N.E.2d 161; *People v. Mitchell* (1992), 152 Ill. 2d 274, 604 N.E.2d 877; contra *People v. Campbell* (1992), 240 Ill. App. 3d 179, 608 N.E.2d 229; *People v. Coulter* (1992), 230 Ill. App. 3d 209, 594 N.E.2d 1163.) In *Hudson*, the court

specifically rejected the argument the State raises in this case and held that the issue of whether the defendant made a *prima facie* case was moot when the trial judge found the State's explanations were valid even though the trial judge in *Hudson* prompted the State to provide the reasons. (*Hudson*, 157 Ill. 2d at 427-28, 626 N.E.2d at 171-72.) The court in *Mitchell* found that its facts were "very similar" to *Hernandez* because the trial judge "asked the State if it wished to comment on why the three jurors were excused" before the judge decided whether a *prima facie* case had been made. (*Mitchell*, 152 Ill. 2d at 287, 289, 604 N.E.2d at 885, 886.) As a result, our supreme court has decided that whether the trial judge prompts the State to present its reasons is irrelevant to the mootness question. Based on this authority, we agree with the defendant that when the trial judge ruled on the ultimate question of purposeful discrimination, the issue of whether the defendant established a *prima facie* case became moot.

Turning to the next step of the *Batson* analysis, we must consider whether the State presented race-neutral reasons for excluding the black venirepersons. To qualify as race-neutral, the reason for exercising the peremptory challenge need not rise to the level of a challenge for cause, and the reason will be considered race-neutral unless an intent to discriminate is inherent in the reason. (*People v. Kitchen* (1994), 159 Ill. 2d 1, 636 N.E.2d 433.) If the State offered several reasons for exercising a peremptory challenge which the trial judge accepted, it is only necessary that the reviewing court accept one of the reasons as race-neutral to affirm. (*People v. Andrews* (1993), 155 Ill. 2d 286, 614 N.E.2d 1184.) The trial judge's ruling on whether the defendant established purposeful discrimination is dependent on credibility and will not be disturbed on appeal unless it was clearly erroneous. *Kitchen*, 159 Ill. 2d 1, 636 N.E.2d 433.

■ In this case, the State explained that it exercised a peremptory challenge against Vernestine Walker because her brother had been charged with murder 20 years ago. Walker stated that as far as she knew, her brother received fair treatment from the criminal justice system. When a member of the venireperson's family has been charged with or convicted of a crime, courts have held it was a race-neutral reason for excluding the person from the jury. (*People v. Hooper* (1989), 133 Ill. 2d 469, 552 N.E.2d 684; *People v. Powell* (1991), 224 Ill. App. 3d 127, 586 N.E.2d 589.) Although Walker's brother was charged 20 years ago and she did not express any resentment over the situation, the State's reason for excluding her was valid.

Therese Henderson was excluded because she was studying psychology in college. The State "did not feel comfortable with having a psychology major with all the abstract views they talk about in

psychology." The fact that a venireperson is a student is a valid race-neutral reason for exercising a peremptory challenge. (*People v. Lovelady* (1991), 221 Ill. App. 3d 829, 582 N.E.2d 1217.) There is nothing inherent in the State's explanation which shows an intent to discriminate against Henderson based on her race, and because the defendant's state of mind was at issue, the State may have validly believed that a psychology student would not be a fair juror. Therefore, the State presented a race-neutral reason for excluding her.

The State exercised a peremptory challenge against Rhonda Jackson because she had a friend whose brother had been charged with drug trafficking and Jackson had accompanied her friend to the courthouse for moral support. The State explained to the judge that Jackson followed the case with great interest and Jackson had "feelings for her friend and her friend may not feel he is getting a fair shake from the criminal justice system." However, Jackson stated during *voir dire* that she did not know her friend's brother, and she did not know what was happening with the case, but she believed it had been "thrown out." She believed that the brother received fair treatment from the criminal justice system and there was nothing about that experience which would affect her ability to be fair and impartial in this case. The trial judge found that Jackson may harbor "ill feelings" toward the State. It is apparent that Jackson's interest in her friend's brother's case was less than the degree the State believed it was because she did not know many details of the case. However, it was not clearly erroneous for the trial judge to find that she may be biased against the State despite her claim that she would be fair and impartial. Jackson went with her friend, whose brother had been charged with a crime, to the same courthouse where the defendant's case was being tried and Jackson followed the case with some interest. This was a sufficient factual basis for believing that Jackson may favor the defendant and there was nothing in the State's reason for excluding her which was inherently discriminatory.

One of the reasons the State articulated for excluding Darrell Aikens was that he did not seem like a person who could be "called upon to make a very important, well-reasoned decision, rational decision." Also, he was "flippant" in answering the judge's questions, and he was there "for a good time." The trial judge stated he was "jovial" and not serious. A venireperson may be properly excluded for a nonserious demeanor. (*Kitchen*, 159 Ill. 2d 1, 636 N.E.2d 433.) Based on the State's reasonable perception of Aikens' demeanor, it properly exercised a peremptory challenge to exclude him.

Lastly, the State excluded Therlena McDavid, in part, because

she was unemployed and she held her last permanent job in 1984. She held temporary jobs since that time. A venireperson's unemployment is a sufficiently race-neutral reason for excluding that person. (*Kitchen*, 159 Ill. 2d 1, 636 N.E.2d 433 (venireperson had never been employed); *Hudson*, 157 Ill. 2d at 432, 626 N.E.2d at 161 (venireperson had been unemployed for several months); contra *People v. Thornton* (1993), 256 Ill. App. 3d 708, 628 N.E.2d 1063 (two-month period of employment was insufficient to be race neutral).) Because McDavid was unemployed, the State had a race-neutral reason for excluding her.

The State also presented an additional reason for excluding Walker, Jackson, Aikens, and McDavid. They did not own their own homes. All but one of the chosen jurors owned a home and the State believed a homeowner would be a more responsible juror than a person who rents. A venireperson may be excluded on a peremptory challenge based on the fact that he rents his home. (*People v. Mack* (1989), 128 Ill. 2d 231, 538 N.E.2d 1107.) Because Walker, Jackson, Aikens, and McDavid did not own a home, the State presented an additional race-neutral reason for excluding them from the jury.

After reviewing the State's reasons for excluding each of the black venirepersons, we conclude that it was not clearly erroneous for the trial judge to rule that the State did not purposefully discriminate on the basis of race when it exercised its peremptory challenges.

## II

The defendant also contends that several comments the prosecutor made in rebuttal argument were improper and require reversal of his conviction.

Prosecutors are granted wide latitude in their closing arguments, but their comments must be based on facts admitted in evidence and any reasonable inferences drawn therefrom. (*People v. Page* (1993), 156 Ill. 2d 258, 620 N.E.2d 339.) A jury's verdict should not be disturbed due to improper comments unless the comments resulted in substantial prejudice to the defendant such that absent those comments, the verdict would have been different. *People v. Pasch* (1992), 152 Ill. 2d 133, 604 N.E.2d 294.

■ The defendant in this case argues that the prosecutor improperly appealed to the jury's passion and prejudice when he stated: "[I]t could have been three or four people, just for the grace of God it was just those [two] people, it could have been a kid, a kid on the block." Arguably, this comment was speculative and not based on the evidence presented at trial, but based on the weight of the evi-

dence against the defendant, it did not result in substantial prejudice. Also, the defendant immediately objected to the comment, and the trial judge sustained the objection and told the prosecutor to discuss the facts of the case; this was sufficient to correct any error. (See *People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970.) Further, the jury was also instructed that closing arguments were not evidence and that they should not be influenced by sympathy or prejudice. As a result, any error that may have occurred was cured and the comment did not amount to reversible error.

The defendant also claims that the prosecutor misstated the law in his rebuttal argument when he commented: "If you have to decide to let him walk out that door with a reckless homicide verdict or even a not guilty on everything, we accept that verdict, because once again the system has worked"; "the issue is does he beat the rap?"; and "we call upon responsible jurors to hold him accountable for it, because he shouldn't get away with that." The defendant, however, did not object to any of these comments at trial and did not specifically raise them in his motion for new trial.

The failure to raise an issue at trial and in a post-trial motion waives that issue for appellate review. (*Pasch*, 152 Ill. 2d 133, 604 N.E.2d 294.) The plain error rule allows review of waived issues, but it is not a general savings clause; it should only be invoked in exceptional circumstances when the evidence at trial was closely balanced or the alleged error was so prejudicial that it deprived the defendant of a fair trial. (*People v. Easley* (1992), 148 Ill. 2d 281, 592 N.E.2d 1036.) Improper comment is plain error when it was either so inflammatory that the defendant could not have received a fair trial or so flagrant as to threaten a deterioration of the judicial process. (*People v. Phillips* (1989), 127 Ill. 2d 499, 538 N.E.2d 500.) It is improper for a prosecutor to argue the punitive effect of a verdict when the jury is not involved with fixing the punishment for the offense. *People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370.

■ The defendant here relies on *People v. Crossno* (1981), 93 Ill. App. 3d 808, 417 N.E.2d 827, which reversed a defendant's convictions based in part on a similar comment. In *Crossno*, the prosecutor stated in rebuttal that a conviction on a lesser included offense would be a slap on the wrist. The appellate court found that the comment was improper under the plain error rule because counsel may not inform the jury of the severity of the sentence to which the defendant may be subject. We agree that the comments in this case, relating to whether the defendant would "walk out the door," "beat the rap," and "get away with it," were similar to the comments found improper in *Crossno* because they misinformed the jury or at least implied to

the jury that the defendant would not be imprisoned if it found him guilty of reckless homicide. However, unlike *Crossno*, they did not amount to plain error. The defendant in this case ignores that the court in *Crossno* found the evidence of guilt was conflicting and there were several instances of improper comment including the one referring to punishment. In this case, the evidence was essentially undisputed and the improper comments were not as extensive or egregious as those presented in *Crossno*. Therefore, the improper comments here do not justify reversal under the plain error rule.

## III

Next, the defendant claims that the trial court erred when it gave the jury a modified version of Illinois Pattern Jury Instructions Criminal 3d No. 26.01A, which was a concluding instruction for the charged offenses, and Illinois Pattern Jury Instructions Criminal 3d No. 7.02, which was an issues instruction for first degree murder (Illinois Pattern Jury Instructions, Criminal, Nos. 26.01A, 7.02 (3d ed. 1992) (IPI Criminal 3d Nos. 26.01A, 7.02)). However, the defendant failed to object to these instructions in the jury instruction conference, failed to offer the instruction which he now claims should have been given, and failed to specifically raise the issue in his motion for new trial.

As stated previously, it is necessary to raise an objection at trial and in a post-trial motion to preserve an issue for review. (*Pasch*, 152 Ill. 2d 133, 604 N.E.2d 294.) It is insufficient, however, to merely refer to an alleged error in a post-trial motion without providing factual detail. (*People v. Burnett* (1993), 257 Ill. App. 3d 383, 628 N.E.2d 1002.) Also, a party may not raise on appeal the failure to give a jury instruction unless he tendered it during trial. (134 Ill. 2d R. 366(b)(2)(i).) The failure to preserve an issue in the trial court results in a waiver of that issue on appeal unless it amounts to plain error. *Pasch*, 152 Ill. 2d 133, 604 N.E.2d 294.

■ Because the defendant in this case did not object to the jury instructions he now claims were improper, did not tender the instruction he now claims should have been given, and did not raise the issue with any specificity in his post-trial motion, he failed to preserve the issue in the trial court. As a result, the issue was waived. Although the defendant claims that the issue should be reviewed under the plain error exception, the evidence presented at trial was not closely balanced because it was essentially undisputed and, as we will discuss, the defendant has not established that the alleged error was so prejudicial that it deprived him of a fair trial.

The defendant complains that the jury should not have been

given a modified version of IPI Criminal 3d No. 26.01A, which was a concluding instruction for the charged offenses, because it prevented the jury from considering reckless homicide. The defendant points to one paragraph in the three-page instruction which stated: "[I]f you find that the State has not proved the defendant guilty beyond a reasonable doubt of [first degree murder], then you must decide whether the defendant is guilty of the lesser offense of reckless homicide."

Instead of that instruction, the defendant urges that Illinois Pattern Jury Instructions Criminal 3d No. 26.01J (Illinois Pattern Jury Instructions, Criminal, No. 26.01J (3d ed. 1992) (IPI Criminal 3d No. 26.01J)) was the proper concluding instruction, but he concedes that IPI Criminal 3d No. 26.01J applies to involuntary manslaughter rather than reckless homicide. In fact, neither IPI Criminal 3d No. 26.01A nor IPI Criminal 3d No. 26.01J exactly patterns the offenses on which the jury was instructed in the present case. Both instructions included second degree murder, which was not involved here, and neither instruction included reckless homicide. Either instruction required modification for use in this case. Further, the jury was not prevented from considering reckless homicide as the defendant argues. The modified instruction did not unduly highlight first degree murder, and other instructions defined reckless homicide and reckless conduct and stated the elements of reckless homicide. As a result, the defendant has not established that the modified instruction deprived him of a fair trial.

■ As to IPI Criminal 3d No. 7.02, the defendant now objects to language in the first degree murder instruction that the State had to prove "the defendant *** performed the acts which caused the death of Eugene [and Janet] Strepek; and *** when the defendant *** did so, he knew his acts created a strong probability of death or great bodily harm to Eugene [and Janet] Strepek *or another*." (Emphasis added.) The defendant contends that it was unnecessary to include "or another" because the jury could have found the defendant formed the necessary state of mind at some other point during the police chase, such as when he drove at the police car. However, reading the instruction as a whole, it is clear that the jury was limited to considering only the acts of the defendant which caused the deaths of Eugene and Janet Strepek, as opposed to other acts which did not cause their deaths. As a result, the instruction did not deny the defendant a fair trial.

## IV

Lastly, the defendant contends that the evidence did not support convictions for first degree murder, but only supported convictions for reckless homicide.

On review, the appellate court has the power to reduce the degree of the offense of which the defendant was convicted. (134 Ill. 2d R. 615(b)(3).) In the exercise of its discretion, the court may reduce the degree of an offense to a lesser included offense when the evidence fails to prove the defendant guilty beyond a reasonable doubt of the greater offense. *People v. Sims* (1993), 245 Ill. App. 3d 221, 614 N.E.2d 893.

When a defendant challenges the sufficiency of the evidence on appeal, the reviewing court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461.) However, the reviewing court will not substitute its judgment for that the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *Young*, 128 Ill. 2d 1, 538 N.E.2d 461.

To convict a defendant of first degree murder, the State must prove beyond a reasonable doubt that the defendant knew his acts created a "strong probability of death or great bodily harm to that individual or another." (Ill. Rev. Stat. 1991, ch. 38, par. 9—1(a)(2).) A defendant's intent may be inferred from his actions. (*People v. Lee* (1993), 256 Ill. App. 3d 856, 628 N.E.2d 436.) "It is not necessary to directly prove that defendant had the intent to murder; all that needs to be shown is that defendant voluntarily and willfully committed an act, the natural tendency of which was to cause death or great bodily harm." (*Lee*, 256 Ill. App. 3d at 861, 628 N.E.2d at 440.) Whether the defendant's acts created a strong probability of death or great bodily harm is a question of fact. *People v. Melind* (1989), 179 Ill. App. 3d 836, 535 N.E.2d 49.

■ The defendant in this case contends that he could not have intended to kill the Strepeks because his view was obstructed as he approached the hill; however, he ignores other facts which support a finding that he knew his acts created a strong probability of death or great bodily harm. The defendant led the police on a high speed car chase down a street which was congested with heavy traffic. As he approached the intersection where the collision occurred, the defendant did not slow down even though there was a dip in the road and the view of the top of the hill was obstructed. He went through a red light at 70 miles per hour, striking a car that was in the cross traffic and killing the Strepeks. There is no question that the defendant's actions were voluntary and willful. The jury was required to decide whether those facts supported a finding that the defendant knew his acts created a strong probability of death or great bodily harm. The

jury heard the evidence and the testimony of the witnesses and determined that the elements of first degree murder were met. To reverse its determination, this court would have to find that the verdict was not rational, which would be contrary to the record. The evidence supported the jury's verdict convicting the defendant of first degree murder and for this reason, this court cannot exercise its discretion and reduce the defendant's convictions to a lesser included offense.

Affirmed.

CAHILL, J., concurs.

JUSTICE JOHNSON, dissenting:
I am unable to join with the majority in holding that the State's use of five of its six peremptory challenges against African-American venirepersons did not violate defendant's right to equal protection of the law. I believe the reasons offered by the State for excluding certain venirepersons from the jury were pretextual as proscribed in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. Consequently, for the following reasons, I must dissent.

Initially, I find it exceedingly troublesome that the trial court requested the State to proffer reasons for use of its peremptory challenges if defendant failed to make a *prima facie* showing of purposeful discrimination. Pursuant to *Batson*, a trial court may request reasons for use of peremptory challenges only after defendant has made a *prima facie* case. (*People v. Wiley* (1993), 156 Ill. 2d 464, 475.) As our supreme court recognized in *Wiley*, when the two-step *Batson* procedure is decomposed into a single decision, it frustrates any attempt to determine whether the trial court properly applied the standards outlined in *Batson*. (*Wiley*, 156 Ill. 2d at 475.) Given the significant confusion created by the trial court's perverted application of *Batson*, I would at least remand this cause for proceedings consistent with *Batson*. See *People v. Bohanan* (1993), 243 Ill. App. 3d 348.

Second, I recognize, as has the majority, that reasons such as "lengthy unemployment" have been used to exclude prospective jurors. I submit, however, that peremptory challenges based on such facially neutral rationales, *i.e.,* low income, lack of sufficient education, lack of home ownership, are extremely suspect because of their disparate impact on minority groups. (See Serr & Maney, *Racism, Peremptory Challenges, and the Democratic Jury: The Jurisprudence of a Delicate Balance*, 79 J. Crim. L. & Criminology 1 (1988).) Without requiring any relationship to specific juror bias or relation to the particular case (accord *Batson* 476 U.S. at 97-98, 90 L. Ed. 2d

at 88-89, 106 S. Ct. at 1723-24), peremptory challenges based on facially neutral rationales can easily serve as a pretext for purposeful discrimination.

In the present case, for instance, the State used a peremptory challenge to exclude Therlena McDavid because she was unemployed. However, the record discloses that Ms. McDavid had only been unemployed for one month as she had been employed by the Internal Revenue Service (IRS) in June, just one month prior to jury selection in this case. See *People v. Thornton* (1993), 256 Ill. App. 3d 708, 713 (wherein this court held that a peremptory challenge based on the fact that a venireperson had been unemployed for two months was pretextual and not race-neutral).

Moreover, the record further reveals that prior to working for the IRS, Ms. McDavid was employed on a contractual basis with the University of Illinois, the United States Customs Service and a brokerage firm. The State did not articulate, and the trial court did not require the State to specify how, based on her employment status, Ms. McDavid exhibited any specific bias related to this case. *Cf. People v. McDonald* (1988), 125 Ill. 2d 182, 198-99.

The State offered as an additional reason to exclude Ms. McDavid, and several other African-Americans, the fact that they did not own homes. As an explanation, the State suggested the fact that a person owns a home would make him or her a more responsible juror than someone who does not. This is an absurd proposition which the State did not, and probably could not, support with any factual or statistical data. I believe no rational relation exists between the prospective jurors' status as homeowners and this particular case. Without question, the exclusion of one venireperson on the basis of race is sufficient to justify a reversal. (*People v. Nicholson* (1991), 218 Ill. App. 3d 273, 278.) I believe the trial court's ruling that the State's explanation for its peremptory challenge against Ms. McDavid was clearly erroneous.

Likewise, I challenge the State's use of its peremptory challenge against Vernestine Walker. The proffered reason for Ms. Walker's exclusion was that her brother was charged with murder approximately 20 years ago. Ms. Walker stated that she did not attend any of the proceedings and that she believed her brother received fair treatment. Standing alone, the 20-year-old charge against Ms. Walker's brother does not demonstrate any specific bias on Ms. Walker's part as related to this case.

Furthermore, I am persuaded, after reviewing the record, that the reason proffered by the State for Ms. Walker's exclusion was pretextual. First, the charge against Ms. Walker's brother is quite old.

Second, in the cases cited by the majority supporting the exclusion of Ms. Walker, the excluded venirepersons had a family member who was actually convicted of a crime (*People v. Hooper* (1989), 133 Ill. 2d 469), or the charge against the family member was currently pending (*People v. Powell* (1991), 224 Ill. App. 3d 127). Third, in the present case, we cannot determine the important fact of whether Ms. Walker's brother was actually convicted, given the State's failure to discover this unknown information.

Moreover, as defendant points out, the pretextual nature of the State's explanation is highlighted by the fact that a white venireperson was accepted as a juror even though his brother had been charged with a crime just $1^1/2$ years prior to this trial. I find it interesting that, unlike Ms. Walker, the accepted juror had attended the court proceedings against his brother, and he was not completely satisfied that his brother received fair treatment from the criminal justice system. The State's reasons for excluding white venirepersons despite similar characteristics and no meaningful distinctions from an African-American venireperson who was excluded will not be considered race-neutral. *People v. Smith* (1992), 236 Ill. App. 3d 812, 815.

Similarly, I find that the reason proffered to exclude Rhonda Jackson was pretextual. In peremptorily challenging Ms. Jackson, the State reasoned that she had a friend whose brother was charged with drug trafficking and that Ms. Jackson accompanied her friend to the courthouse where, according to Ms. Jackson, the case against the friend's brother was eventually dismissed. The majority acknowledges that Ms. Jackson stated she did not know many details of the case and that she believed her friend's brother received fair treatment. However, I fail to understand how the majority concludes that the mere fact that Ms. Jackson accompanied her friend to the courthouse for moral support allows for a reasonable belief that she "may favor the defendant." To be considered race-neutral, the State's reason for excluding venirepersons must show that the prospective jurors "exhibit a 'specific bias' related to the particular cause to be tried, rather than the fact that their race *** will bias them in favor of the defendant." *Smith*, 236 Ill. App. 3d at 814.

For the reasons stated, I am constrained to disagree with the majority that the trial court's acceptance of the State's proffered reasons for peremptorily challenging certain African-American venirepersons was not clearly erroneous. Consequently, I would reverse defendant's convictions and remand this cause for a new trial.